```
FUNCTION - CHANGE                                              CASE SCREEN 4
     Case number : 05-C-70                           Action Log
          SIDNEY V BARKER              vs. JOHN A KING, D.O.
Line   Date                    Action / Results
    1 02/07/05 CASE FILED;SUM TO ATTY FOR SERVICE
    2 02/14/05 -COS OF PLFS 1ST SET REQS FOR PROD OF DOCS TO TO ROBERT EDWARDS
    3          /BOB EDWARDS & WRIGHT
    4 02/14/05 -COS/PLFS 1ST SET REQS FOR PROD OF DOCS TO EBI
    5 02/22/05 -STIPULATION
    6 03/07/05 -COS'S/PLFS 1ST REQS FOR PROD OF DOCS TO MCNAIR/PLFS 1ST SET REQ
    7          FOR PROD OF DOCS TO TVHS DBA PGH
    8 03/28/05 -RET SUMS/KING/BY SOS 3-3/RET GRN CRD/BY SAM NOMPLEGGI/3-8
    9 03/31/05 -OMNIBUS MEM OF LAW IN SUPPORT OF THE MOTIONS TO DISMISS OF DEFS
   10          WRIGHT MED AND ROBERT EDWARDS
   11 03/31/05 -MOTION TO DISMISS OF DEFS WRIGHT & EDWARDS
   12 04/06/05 P'S RESPONSE TO MCNAIR'S MOT TO DIS
   13 04/27/05 -MAILED NOT & ACK OF REC OF SUMS & COMPLNT TO KING
   14 05/17/05 =ACCEPTANCE OF SERVICE/ATTORNEY OFFUTT/3-3-05
   15 06/06/05 -ACCEPTANCE OF SERVICE/WRIGHT & EDWARDS/S. FARMER, ATTY/3-8
   16
   17 06/06/05 -ACPT OF SERV/MCNAIR/BY THOMAS HURNEY/3-11
   18 06/13/05 -ACPT OF SRV/HCA,HLTRST,HOSP CORP/BY RICHARD JONES/2-17
C=Chg  D=Del  1-4=Scr  M=Menu  T=Chg Line#  PgUp PgDn P=Prt A=Add I=Image
```

Case 2:07-cy-00815  Document 2-1  Filed 12/13/07  Page 2 of 144 PageID#:11

```
FUNCTION = CHANGE                                        CASE SCREEN 4
     Case number : 05-C-70                          Action Log
          SIDNEY V BARKER              vs. JOHN A KING, D.O.
Line   Date                      Action / Results
  19 06/17/05 -ACPT OF SRV/EBI/BY NEVA LUSK/2-8
  20 06/16/05 /AFFIDAVIT OF SERV/JOHN KING/DEL TO:MICHAEL TANNER/3-22-05
  21 06/21/05 =AFFIDAVIT OF SERVICE/JOHN A KING
  22 06/23/05 /MAILED NOT & ACK OF REC OF SUMS & CMPLNT TO KING BY CERT MAIL
  23 06/24/05 -RET CERT MAIL REC/KING/6-23
  24 06/27/05 -COPY OF ORD OF PUB
  25 06/29/05 -ANSWER & CROSS CLAIM OF TVHS & MOT TO DISMISS
  26 07/01/05 :DEF EBI,L.P.'S ANSWER TO PL'S COMPLAINT & CROSCLM OF EBI,L.P.
  27 06/30/05 =GREEN CARD/SIGNED BY SAM NOMPLEGGI/6-27-05
  28 07/20/05 -COS/TVHS 1ST SET REQS FOR PROD OF DOCS & 1ST SET INTR TO PLF
  29 08/01/05 -AFFIDAVIT OF PUBLICATION/KING
  30 08/05/05 -ANSWER OF EDWARDS & WRIGHT TO CROSS CLM OF TVHS
  31 08/11/05 -ANSWER OF TVHS TO CROSS CLM OF EBI
  32 09/22/05 .LTR FRM JDG TO CNSL IN RE:HRG 10/21/05 1:30PM JDG ED COURTROOM
  33 10/07/05 :MOT OF PL TO CONSOLIDATE LITIGATION
  34 10/19/05 :MOT TO BIFURCATE OF DEF TEAYS VALLEY HEALTH SERV INC. D/B/A  PU
  35          TNAM GENERAL HOSPITAL
  36 10/19/05 :MOT TO CONSOLIDATE OF DEF TEAYS VALLEY HEALTH SERV INC. D/B/A P
C=Chg  D=Del  1-4=Scr  M=Menu  T=Chg Line#  PgUp PgDn P=Prt A=Add I=Image
```

FUNCTION = CHANGE                                          CASE SCREEN  4
    Case number : 05-C-70                        Action Log
        SIDNEY V BARKER            vs. JOHN A KING, D.O.

| Line | Date | Action / Results |
|------|------|------------------|
| 37 | | UTNAM GENERAL HOSPITAL |
| 38 | 10/20/05 | :MOT FOR ADMISSION PRO HAC VICE OF JOHN FITZPATRICK |
| 39 | 10/21/05 | :OBJECTION OF SIDNEY V. BARKER & ALL OTHER PLS REPRESENTED BY TH |
| 40 | | E LAW FIRM OF CURRY & TOLLIVER,, PLLC TO THE MOTION OF TEAYS VAL |
| 41 | | LEY HEALTH SERV INC. D/B/APUTNAM GEN HOSPITAL TO BIFURCATE ISSUE |
| 42 | | S OF NEGLIGENT CREDENTIALING & PRIVILEGING |
| 43 | 11/03/05 | :O/ PRO HAC VICE ADMISS OF JOHN M. FITZPATRICK |
| 44 | 11/16/05 | COS/P RESPONSE TO T.V.HEATLTH SERV INTERR & REQ FR PROD OF DOC |
| 45 | 11/23/05 | O/CASE CONSOLIDATED W/05-C-151 |
| 46 | 11/28/05 | :ANSWER & CROSCLM OF HCA INC. HEALTHTRUST, INC. THE HOSPITAL CO. |
| 47 | | & HOSPITAL CORP. LLC |
| 48 | 12/07/05 | :MOT FOR ADMISS PRO HAC VICE OF KELVIN L. NEWSOME |
| 49 | 11/28/05 | -MOTION TO DISMISS OF HCA INC,HEALTHTRUST INC THE HOSPITAL CO AN |
| 50 | | HOSPITAL CORP |
| 51 | 12/14/05 | -ANSWER OF WRIGHT MEDICAL TO CROSS-CLAIM OF HCA,HEALTHTRUST, |
| 52 | | HOSPTIAL CO & HOSPITAL CORP |
| 53 | 12/14/05 | -ANSWER OF ROBERT EDWARDS TO CROSS-CLAIM OF HCA,HEALTHTRUST, |
| 54 | | HOSPITAL CO & HOSPITAL CORP |

C=Chg  D=Del  1-4=Scr  M=Menu  T=Chg Line#  PgUp PgDn P=Prt A=Add I=Image

FUNCTION = CHANGE
Case number : 05-C-70
Case 2:07-cv-00815  Document 2-1  Filed 12/13/07  Page 4 of 144  PageID #: 13  SCREEN 4
CASE 3
Action Log
SIDNEY V BARKER                    vs. JOHN A KING, D.O.

| Line | Date | Action / Results |
|------|------|------------------|
| 55 | 12/23/05 | -OPPOSITION TO PL MOTION FOR LEAVE TO AMEND |
| 56 | 12/19/05 | O/ADMITTING PRO HAC VICE ADMISSION OF KELVIN L NEWSOME |
| 57 | 12/29/05 | -PRO SE ANSWER OF JOHN KING |
| 58 | 01/03/06 | :STATEMENT OF RESPONSIBLE LOCAL ATT. |
| 59 | 01/03/06 | :APPLICATION FOR PRO HAC VICE ADMISSION OF N. DAVID LYONS |
| 60 | 01/03/06 | :STATEMENT OF RESPONSIBLE LOCAL ATTORNEY |
| 61 | 01/03/06 | :APPLICATION FOR PRO HAC VICE ADMISSION OF LANE J. ASHLEY |
| 62 | 01/03/06 | :VERIFIED STATEMENT OF APPLICATION FOR PRO HAC VICE ADMISSION OF |
| 63 |  | N. DAVID LYONS |
| 64 | 01/03/06 | :VERIFIED STATEMENT OF APPLICATION FOR PRO HAC VICE ADMISSION OF |
| 65 |  | LANE J. ASHLEY |
| 66 | 01/05/06 | :OBJECTION OF PL & ALL OTHER PLS REPRESENTED BY THE LAW FIRM CUR |
| 67 |  | RY & TOLLIVER TO THE REQ FOR PRO HAC VICE ADMISSION BY N. DAVID |
| 68 |  | LYONS & LANE J. ASHLEY |
| 69 | 01/05/06 | :PL RESP TO DEF MOT IN OPPOSITION TO PL MOT TO FILE AN AMENDED C |
| 70 |  | OMPLAINT |
| 71 | 01/03/06 | :O/ADMITTING PRO HAC VICE ADMISSION OF LANE J. ASHLEY |
| 72 | 01/03/06 | :O/ADMITTING PRO HAC VICE ADMISSION OF N. DAVID LYONS |

C=Chg  D=Del  1-4=Scr  M=Menu  T=Chg Line#  PgUp PgDn P=Prt A=Add I=Image

```
FUNCTION = CHANGE                                              CASE SCREEN 4
    Case number : 05-C-70                          Action Log
         SIDNEY V BARKER            vs. JOHN A KING, D.O.
Line    Date                     Action / Results
  73  01/05/06  -COS/PLF RESPONSE TO DEFS MOTION IN OPPOSITION TO PLF
  74            MOTION TO FILE AND AMENDED COMPLAINT
  75            INCORRECT POSTING
  76                             "
  77                             "
  78  01/05/06  -OBJECTION OF SIDNEY V. BARKER AND ALL OTHER PLTF REPRESENTED
  79            BY THE LAW FIRM CURRY & TOLLIVER TO THE RQST FOR PRO HAC VICE
  80            ADMISSION BY N.DAVID LYONS AND LANE J. ASHLEY
  81  01/06/06  -SUPPLEMEMTAL MOTION OF PLTF TO COMPEL TEAYS VALLEY HEALTH SRVS
  82            D/B/A PUTNAM GENERAL HOSPITAL TO PRODUCE RECORDS
  83  01/06/06  -SCHEDULE OF DOCUMENTS SUBJECT TO MOTION TO COMPEL
  84  02/21/06  :JOINT STIPULATION & ORDER PUTNAM GEN MOTION TO DISMISS IS DENIE
  85  03/23/06  -NOTICE OF CHANGE OF ADDRESS AND CONTACT INFORMATION FOR ROBERT
  86            MARTIN ATTY FOR HEALTH CARE IDNEMNITY
  87  04/18/06  :PROTECTIVE O/FOR PUTNAM GENERAL HOSPITAL & TEAYS VALLEY HEALTH
  88            SERVICES
  89  05/30/06  -MOTION TO COMPEL JOHN KING TO PRODUCE RECORDS
  90  08/15/07  -SUBP W/ SIGNED GREEN CARD TO:UNITED HEALTHCARE
C=Chg  D=Del  1-4=Scr  M=Menu  T=Chg Line#  PgUp PgDn P=Prt A=Add I=Image
```

O5C-151

| LINE | DATE | ACTION |
|---|---|---|
| 1 | 03/25/05 | CASE FILED/SERVICE TO ATTY |
| 2 | 04/27/05 | -MAILED NOT & ACK OF REC OF SUMS & COMPLNT TO KING |
| 3 | 05/02/05 | -RET SUMS/KING/BY SOS 4-21/RET GRN CRD/BY NOMPLEGGI/NO DATE |
| 4 | 05/06/05 | -NOTICE OF DEP OF LEONARD FICHTER/6-29 9AM |
| 5 | 05/16/05 | -DAVID MCNAIRS MOTION TO DISMISS & MEMORANDUM IN SUPPORT |
| 6 | 05/16/05 | -NOTICE OF DEP OF JACKIE FRAME/7-15 8:30AM |
| 7 | 05/16/05 | /MEMORANDUM IN SUPPORT OF DAVID MCNAIR'S MOTION TO DISMISS |
| 8 | 06/01/05 | -STIPULATION |
| 9 | 06/06/05 | -MOTION TO DISMISS OF DEFS WRIGHT & EDWARDS & MEM IN SUPPORT |
| 10 | 06/06/05 | -ACPT OF SERVICE/WRGHT & EDWARDS/BY S. FARMER, ATTY, 5-3 |
| 11 | 06/06/05 | -ACPT OF SERV/MCNAIR/BY THOMAS HURNEY/5-12 |
| 12 | 06/09/05 | -MOTION FOR ADMS PRO HAC VICE OF MATTHEW TAYLOR & DANA ASH |
| 13 | 06/09/05 | -APPLICATION OF MATTHEW A TAYLOR FOR ADMS PRO HAC VICE |
| 14 | 06/09/05 | -APPLICATION OF DANA J ASH FOR ADMS PRO HAC VICE |
| 15 | 06/09/05 | -STATEMENT OF LOCAL ATTY |
| 16 | 06/13/05 | -ACPT OF SRV/HCA,HLTRST,HOSP CORP/BY RICHARD JONES/5-5 |
| 17 | 06/17/05 | -ACPT OF SRV/EBI/BY NEVA LUSK/1-3 |
| 18 | 06/21/05 | =AFFIDAVIT OF SERVICE/JOHN A KING |
| 19 | 06/23/05 | /MAILED NOT & ACK OF REC OF SUMS & CMPLNT TO KING BY CERT MAIL |
| 20 | 06/24/05 | -RET CERT MAIL REC/KING/6-23 |
| 21 | 06/27/05 | -COPY OF ORD OF PUB |
| 22 | 06/29/05 | -ANSWER & CROSS CLAIM OF TVHS & MOTION TO DISMISS |
| 23 | 07/01/05 | :DEF. EBI L.P.'S ANSWER TO PL'S COMPLAINT & CROSCLM OF EBI,L.P. |
| 24 | 06/30/05 | =GREEN CARD/SIGNED BY SAM NOMPLEGGI/6-27-05 |
| 25 | 07/20/05 | -COS/TVHS 1ST SET REQ FOR PROD OF DOCS & 1ST SET INTR TO PLF |
| 26 | 08/05/05 | -ANSWER OF WRIGHT & EDWARDS TO CROSS CLM OF TVHS |
| 27 | 08/11/05 | -ANSWER OF TVHS TO CROSS CLM OF EBI |
| 28 | 08/12/05 | -RESP OF PLF TO MCNAIRS MOT TO DISMISS |
| 29 | 08/15/05 | -ANSWER OF EBI TO CROSS CLM OF TVHS |
| 30 | 08/18/05 | =O/MATTHEW A TAYLOR & DANA J ASH ARE ADMITTED TO PRACTICE LAW |
| 31 | | IN WV FOR LIMITED PURPOSE OF THIS CASE |
| 32 | 09/22/05 | .LTR FRM JDG TO CNSL IN RE:HRG 10/21/05 1:30PM JDG ED COURTROOM |
| 33 | 09/28/05 | :DEF DAVID MCNAIR'S REPLY TO PL'S RESP TO DAVID MCNAIR MOT TO DI |
| 34 | | SMISS |
| 35 | 10/07/05 | :MOT OF PL TO CONSOLIDATE LITIGATION |
| 36 | 10/07/05 | :AFFIDAVIT OF ARDEN J. CURRY II |
| 37 | 10/03/05 | P'S SUPP RES TO D/DAVID MCNAIRS BRIEFS IN SUPP MOT TO DIS |
| 38 | 10/03/05 | P'S RES TO D/TEAYS VLY HEALTH SERV MOT TO DIS |
| 39 | 10/03/05 | AFFIDAVIT OF SERVICE FROM JOE PLEASANT ATTY |
| 40 | 10/03/05 | ACCEPTANCE OF SERVICE FROM OC OFFUTT, JR. ATTY |
| 41 | 10/05/05 | MOT TO COMPEL DAVID MCNAIR TO PROD REC |
| 42 | 10/05/05 | CERT OF SERVICE ARDEN J. CURRY II |
| 43 | 10/05/05 | MOT TO COMPEL PUTNAM GENERAL HOSP TO PROD REC |
| 44 | 10/05/05 | CERT OF SERVICE ARDEN J. CURRY II |
| 45 | 10/05/05 | MOTION TO COMPEL WRIGHT TECH & ROBERT EDWARDS TO PROD REC |
| 46 | 11/18/05 | :NOTICE OF MOTION |
| 47 | 11/18/05 | :PL MOT TO FILE AN AMENDED COMP SEEKING TO ASSERT AN UNFAIR TRAD |
| 48 | | E PRACTICES ACTION AGST HEALTH CARE INDEMNITY INC. |
| 49 | 11/23/05 | FINAL ORDER ENTERED COUNT-CONSOLIDATED W/05-C-70 |
| 50 | 11/23/05 | ***ALL FUTURE FILINGS TO BE FILED IN 05-C-70 ONLY**CONSOLIDATED |

**ORIGINAL**

IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

SIDNEY V. BARKER,

        **Plaintiff,**

**vs.**                              **CIVIL ACTION NO.** 05-C-70

**JOHN A. KING, D.O.; DAVID McNAIR;**
**TEAYS VALLEY HEALTH SERVICES, INC.,**
**d/b/a PUTNAM GENERAL HOSPITAL;**
**HCA, INC.; HEALTHTRUST, INC. –**
**THE HOSPITAL COMPANY, a Foreign**
**Corporation; and HOSPITAL CORP, L.L.C.;**
**WRIGHT MEDICAL TECHNOLGY, INC.;**
**ROBERT EDWARDS aka BOB EDWARDS;**
**and EBI L.P.**

        **Defendants.**

## C O M P L A I N T

### Preface To Complaint

The *West Virginia Medical Professional Liability Act, West Virginia Code §55-7B-1 et seq.,* requires the service by certified mail of a Notice of Claim against a health care provider prior to commencement of a medical malpractice action. In this complaint, the plaintiff asserts claims, including claims for negligent credentialing and privileging, trespass, assault and battery, intentional and negligent infliction of mental distress, civil conspiracy, joint venture/joint enterprise, deceit and fraud, piercing the corporate veil/alter ego, tort of outrage, violations of the *West Virginia Business Corporation Act,* fraud, deceit and scam transaction in defraud of patients and other legitimate creditors. Inasmuch as this Complaint seeks substantial remedies not covered by the *West Virginia Medical Professional Liability Act,* the plaintiff is filing this lawsuit simultaneously with the filing of the Notice of Claim. Upon the expiration of the thirty (30) day time period, as provided in the *West Virginia Medical Professional Liability Act,* the

plaintiff will refile this litigation and lawsuit in identical form together with claims of medical

professional liability.  Plaintiff takes this action to prevent the defendants from asserting

inconsistent positions in connection with the coverages and jurisdictions of the *West Virginia*

*Medical Professional Liability Act* and to ensure that the Plaintiff has fully complied with the

applicable West Virginia statutes of limitation for the bringing of litigation, both those covered

under the *West Virginia Medical Professional Liability Act* and those outside the jurisdiction or

scope of that act.

While reference may be made in this Complaint to actions which could constitute

medical professional liability claims against each of these defendants, this suit is not a claim

brought for professional negligence under the provisions of the *West Virginia Medical*

*Professional Liability Act*.  Instead, it only applies to claims that plaintiff may have against the

defendants that are not part of, or covered by, the *West Virginia Medical Professional Liability*

*Act*.

## COUNT I
## General Allegations

1.     At all times relevant to the allegations contained in this Complaint, plaintiff was a

resident and citizen of the State of West Virginia, who sought medical care through the services

of each of the defendants.

2.     At all times relevant to the allegations contained in this Complaint, John A. King,

DO,  [sometimes referred to as "King"] was an osteopathic physician, practicing at Teays Valley

Health Services, Inc.'s [sometimes referred to as "Teays Valley"] facility known as Putnam

General Hospital [sometimes referred to as "PGH"] in Putnam County, West Virginia.

3.    At all times relevant to the allegations set forth in this Complaint, David McNair [sometimes referred to as "McNair"] was acting in the capacity of a physician assistant or orthopedic physician assistant, and provided care and services to the plaintiff.

4.    At all times relevant to the allegations set forth in this Complaint, Teays Valley was a West Virginia corporation who was the alleged owner of PGH, in Putnam County, West Virginia.

5.    At all times relevant to the allegations set forth in this Complaint, HCA, Inc. [sometimes referred to as "HCA"] owned, operated, controlled, or was the alter ego of Teays Valley.

6.    Healthtrust, Inc. - The Hospital Company [sometimes referred to as "Healthtrust"], a Delaware corporation, the stock of which is owned 100 percent by HCA, and which was the sole member of Hospital Corp, L.L.C. [sometimes referred to as "Hospital Corp"], which allegedly owned 100 percent of the stock of Teays Valley. HCA owned, operated, controlled or was the alter ego of Healthtrust, a non-operating holding company that had no employees.

7.    Hospital Corp is a foreign limited liability company who allegedly owned 100 percent of the stock of Teays Valley. HCA owned, operated, controlled or was the alter ego of Hospital Corp, a non-operating holding company who had no employees.

8.    On February 11, 2003, plaintiff was admitted to Putnam General Hospital and came under the care of King. King declared the admission to be a "neurological emergency" because of intractable lumbar pain and inability to have normal gait and activities. On February 12, 2003, a lumber mylegram was obtained. Miraculously, by February 14, 2003, the "neurological emergency" had ended because Workers' Compensation had refused to pay for

surgical intervention at that time. Plaintiff was then readmitted on March 21, 2003, when King and McNair performed surgery. King and McNair an anterior interbody fusion of L4-L5 and L5-S1, with the insertion of an EBI bone stimulator, allograft placement in the form of Allomatrix from Wright Medical, along with posterior lateral decompressions of L4-L5 and L5-S1, and central decompression of L2-L3 and L3-L4. The surgical procedure performed by King and McNair was unnecessary. The products manufactured by both EBI and Wright Medical were used the procedure.

9.     McNair, while an employee of Teays Valley, assisted King in the operative procedure set forth in the preceding paragraph. McNair's services were integral to the operative procedure performed by King. The operative report lists McNair as assisting in the operative procedure in the capacity of a physician assistant or orthopedic physician assistant, and his participation in the operative procedure was in that capacity.

## COUNT II
### Negligent Credentialing and Privileging

10.     Plaintiff restates and realleges all allegations contained in Count I hereinabove, as if fully set out herein.

11.     The Bylaws of the Medical Staff of Putnam General contain procedures for the granting of temporary privileges to physicians. King applied for temporary privileges at Teays Valley on October 30, 2002, and again on January 5, 2003. King was granted temporary privileges under his first application on November 5, 2002, and was granted additional temporary privileges under his second application on January 16, 2003.

12.     In adopting the Bylaws of the Medical Staff, Teays Valley established procedures for the permanent credentialing and privileging of physicians. King was granted permanent

credentials and privileges by Teays Valley on February 7, 2003, in the fields of orthopedics and anesthesiology. The specific privileges in orthopedics and anesthesiology that were granted to King on both a temporary and permanent basis, are as follows:

*Delineation of Privileges – Orthopedics*

| | |
|---|---|
| Orthopedics | Amputation of an extremity |
| Orthopedics | Appropriate closed or open treatment of fractures and dislocations of the spine, pelvis, and extremities |
| Orthopedics | Arthrodesing a joint |
| Orthopedics | Incising tissues related to the musculoskeletal system including fascia, muscle, bone, tendon sheath and cartilage, as well as joint cavity, for the purpose of drainage, biopsy, removal of injured part, reconstruction of bone and joint or bone, joint tendon or ligament or replacement of such |
| Orthopedics | Introduce or remove implant made of metal or some other prosthetic material into either a bone or a joint |
| Orthopedics | Repairing, revising, or reconstructing skin, muscle, fascia, tendon, ligament and bone, including grafting as well as peripheral nerves |
| Orthopedics | Treatment of fractures by manipulation, or operations of skeletal structures, specifically excluding the skull or facial bones |
| Orthopedics | IV conscious sedation; Other: Total joints, revision total joint, adult cervical and lumbar spine surgery, foot, ankle, hip, hand, shoulder surgeries |

*Delineation of Privileges – Anesthesiology*

| | |
|---|---|
| Anesthesiology | Diagnosis and management of pain |
| Anesthesiology | IV conscious sedation |

13.     Teays Valley negligently and with a willful, wanton, reckless and intentional disregard for its obligations of patient safety, granted King the temporary and permanent credentials and privileges set forth in the preceding paragraph. The acts of negligence and

willful, wanton, reckless and intentional misconduct that was committed by Teays Valley in granting both temporary and permanent credentials and privileges to King include, but are not limited to the following actions:

(a)    King submitted to Teays Valley two separate applications for medical staff appointment and clinical privileges, including an application dated October 19, 2002, and a second application dated December 17, 2002.  Neither document constituted a full and completed application because each contained significant omissions of mandatory information necessary for Teays Valley to meet its obligations under the credentialing and privileging process as was mandated by the standard of care, its own Bylaws of its Medical Staff, and by the Joint Commission on Accreditation of Health Care Organizations ["JCAHO"].  The applicable standard of care, the Medical Staff Bylaws, and even the October and December 2002 applications themselves, required King to provide full and complete information during the application process. The failure to obtain this information by Teays Valley resulted in multiple violations of the applicable standard of care.

(b)    The applicable standard of care required Teays Valley to obtain original source verification of King's licensure in the field of medicine. In direct violation of the standard of care, Teays Valley negligently, willfully, wantonly, recklessly, and intentionally failed to obtain such information, but nonetheless granted both temporary and permanent credentials and privileges to King.

(c)    The applicable standard of care required Teays Valley to obtain original source verification of King's relevant medical training and experience.   In direct

violation of the standard of care, Teays Valley negligently, willfully, wantonly, recklessly, and intentionally failed to obtain original source verification of King's relevant medical training and experience, but nonetheless granted both temporary and permanent credentials and privileges to King.

(d)     The applicable standard of care required Teays Valley to ensure that King had the necessary current clinical competence to conduct the privileges he was requesting. In direct violation of the standard of care, Teays Valley negligently, willfully, wantonly, recklessly, and intentionally failed to obtain appropriate evidence of current clinical competence, but nonetheless granted both temporary and permanent credentials and privileges to King.

(e)     The applicable standard of care required Teays Valley to develop appropriate criteria for the granting of clinical privileges in order to determine an applicant's ability to perform patient care services within the scope of all clinical privileges requested. In direct violation of the standard of care, Teays Valley negligently, willfully, wantonly, recklessly, and intentionally failed to develop such criteria, but nonetheless granted both temporary and permanent credentials and privileges to King.

(f)     The applicable standard of care required Teays Valley to comply with its own Bylaws of its Medical Staff, as well as its Corporate Bylaws, in the granting of temporary and permanent credentials and privileges to King. In direct violation of the standard of care, the Bylaws of the Medical Staff, and its own Corporate Bylaws, Teays Valley negligently, willfully, wantonly, recklessly, and

intentionally failed to comply with its own internal requirements for the granting of medical staff membership and clinical privileges.

(g)     At all times relevant to the allegations contained in this Complaint, Teays Valley was the named owner of a medical facility known as PGH, which provided medical services and facilities to the general public, and advertised and warranted to the general public, including citizens of the State of West Virginia, that it was a hospital that provided general surgical services, including orthopedic surgeons and that the physicians credentialed and privileged to practice in that facility were qualified and competent physicians.

(h)     As a direct and proximate result of the allegations set forth in this Complaint, Teays Valley owed a duty to the citizens of West Virginia, including the plaintiff, to exercise due and proper care in the operation, selection, credentialing, privileging and supervision of its medical care services and facilities, including the hiring of employees, the granting of medical staff privileges to physicians who practice at their facilities, and continued monitoring and supervision of the care, treatment, and services provided by its employees and medical staff.

(i)     Teays Valley negligently, willfully, wantonly, recklessly and intentionally failed to comply with its duties to hire, supervise, and administer its medical staff and facilities at PGH as the same relates to the hiring or granting medical staff privileges to King and McNair, and/or the supervision and continued monitoring of King and McNair.

(j)     Teays Valley knew or should have known that King did not have the minimum levels of educational training, experience, and competency to be granted

temporary or permanent credentials or privileges by it. The frequency and severity of the deviations from the applicable standard of care committed by Teays Valley evidence a willful, wanton, reckless, and intentional disregard for its obligations of patients' safety in the credentialing and privileging process so as to justify an award for both compensatory and punitive damages. But for the deviations in the applicable standard of care, King would not have been granted temporary or permanent credentials by Teays Valley, and to the extent that King deviated from the applicable standard of care in any of his operative procedures, Teays Valley is liable for any damage award rendered against King.

(k) At all times related to the operative procedures referenced in this Complaint, McNair was employed by Teays Valley and worked in the capacity of physician assistant or orthopedic physician assistant. The applicable standard of care required Teays Valley to conduct credentialing and privileging of allied health professionals such as physician assistants.

(l) At all times relevant to the operative procedure referenced in this Complaint, an individual who was performing the duties and/or responsibilities as a physician assistant was required, under the provisions of *West Virginia Code § 30-14A-1* and/or *West Virginia Code § 30-3-16*, to be licensed. The State of West Virginia Board of Osteopathy and the State of West Virginia Board of Medicine have each confirmed that McNair was never licensed by either of those entities as a physician assistant.

(m) Teays Valley negligently, willfully, wantonly, recklessly and intentionally allowed McNair, as its employee, to perform the duties of a physician assistant

during the operative procedure referenced in this litigation. Because McNair was not licensed as a physician assistant, he was not legally allowed to perform those services but, nonetheless, the operative report prepared by King notes that McNair assisted in the operative procedure as an orthopedic physician assistant and was integral to the operative procedure.

(n)     Teays Valley, in direct violation of the standard of care, negligently, willfully, wantonly, recklessly and intentionally failed to appropriately credential and privilege McNair. The frequency and severity of the deviations from the applicable standard of care committed by Teays Valley evidences a willful, wanton, and intentional disregard for its obligations of patient safety in the credentialing and privileging process so as to justify an award of both compensatory and punitive damages. But for the deviations in the applicable standard of care to ensure the appropriate credentialing and privileging of McNair, McNair would not been to permitted to assist, and in some instances perform operative procedures at Teays Valley. To the extent that McNair deviated from the applicable standard of care in any of the operative procedures he participated in, Teays Valley is vicariously liable for any damage award rendered against McNair.

(o)     Prior to both the credentialing and privileging of King, Teays Valley had been the subject of a full survey of its hospital conducted by JCAHO on October 2, 2000 and on August 14, 2002. JCAHO's survey of October 1999 found that Teays Valley, under credentialing compliance, fell in the bottom 36 percent of all accredited surveyed hospitals in the United States. During the full survey

performed two years later, JCAHO again identified performance deficiencies in the area of credentialing and privileging. Under its evaluation of Teays Valley's credentialing compliance, JCAHO found that Teays Valley had fallen by more than 100 percent to place it in the bottom 16 percent of examined accredited facilities. At the time Teays Valley credentialed and privileged King and McNair, it was on notice of significant deficiencies in its credentialing and privileging process but, nonetheless, continued to negligently, willfully, wantonly, recklessly and intentionally fail to comply with the applicable standard of care in the credentialing and privileging of each of these individuals. Teays Valley's failures, in light of its prior notices of deficiencies, gives rise to a claim for both compensatory and punitive damages for its gross actions and inactions in the credentialing and privileging process of both King and McNair.

(p)   At all times relevant to the credentialing and privileging of King and McNair, Frank Molinaro was the acting CEO of Teays Valley. Molinaro was appointed to his position as CEO of Teays Valley as a result of the direct actions of the defendant HCA, Healthtrust and/or Hospital Corp. Molinaro personally participated in the credentialing process, personally participated in the recruitment of King and McNair, personally granted temporary privileges to King, and was personally involved in the ultimate decision-making process to grant medical staff membership and clinical privileges to King and the decision to allow McNair to practice at PGH. Molinaro's participation in the credentialing process was done negligently, and the substance and nature of his deviations from the standard of care evidence a willful, wanton, reckless and intentional disregard for the patient

safety responsibilities. Because Molinaro was appointed to his position as CEO of Teays Valley by HCA, Healthtrust and/or Hospital Corp, then HCA, Healthtrust and Hospital Corp are vicariously liable for all actions and inactions committed by Molinaro in the credentialing and privileging process as well as the retention of King and McNair.

## COUNT III
### Trespass, Assault and Battery

14.    Plaintiff restates and realleges all allegations contained in Counts I and II hereinabove, as if fully set out herein.

15.    McNair provided the services of a physician assistant or orthopedic physician assistant during the operative procedure that is the subject of this litigation. He was not licensed to do so. His integral involvement in the operative procedure while not being qualified and while being unlicensed amounts to a trespass against the plaintiff, as well as assault and battery. As the employer of McNair, Teays Valley is vicariously liable for the trespass, assault and battery committed by McNair through his participation in the plaintiff's operative procedure.

16.    As has been set forth in the Screening Certificate of Merit referenced in this Complaint, the operative procedure performed by King was both negligent and unnecessary. The actions of King in performing a negligent and unnecessary surgery upon the plaintiff amounts to a trespass, assault and battery.

## COUNT IV
### Wright Medical and Edwards

17.    Plaintiff restates and realleges all allegations contained in Counts I, II, and III hereinabove as if set out verbatim herein.

18.     Wright Medical and/or Edwards knew or should have known that King did not have the appropriate qualifications, training, and expertise to use Wright Medical's products, equipment, and medical devices in the appropriate manner during the plaintiff's surgery.

19.     Wright Medical and/or Edwards were aware that King was using Wright Medical's products, equipment and medical devices in a manner not suitable for their intended use, and further knew that King was negligently performing surgeries using Wright Medical products, equipment and medical devices in an inappropriate manner.

20.     In selling its products, equipment and medical devices Wright Medical and/or Edwards warranted that said products were reasonably safe for their intended use, included the use to which they were put during the plaintiff's surgery.

21.     The products, equipment and medical devices sold by Wright Medical and/or Edwards, including MIG and Allomatrix, were not reasonably fit for their intended use, giving rise to a claim or cause of action for strict liability against Wright Medical and/or Edwards.

22.     Wright Medical and/or Edwards willfully, negligently, and carelessly failed to warn, inform, instruct and apprise the plaintiff that its products were not reasonably safe for for use in the plaintiff's surgery due to the manner in which King and McNair were using the products.

23.     Wright Medical and/or Edwards, in manufacturing, selling and distributing products, equipment and medical devices, including MIG and Allomatrix, had the duty to use due care and diligence to the general public in general and to the plaintiff in particular, to reasonably ensure that its products were being used in a proper manner and that its products were reasonably safe for their intended use.

24. The defendants Wright Medical and/or Edwards manufactured, sold and distributed a product that was defective in that it was not reasonably safe for its intended use.

25. Wright Medical, in supplying King, McNair and/or Teays Valley its products, equipment and medical devices, breached certain warranties owed to the plaintiff, including express and implied warranties and the warranty of fitness for a particular purpose.

26. Based upon information and belief, King, Wright Medical and/or Edwards entered into an agreement involving improper remuneration for King's use of Wright Medical products. This remuneration agreement, along with other actions of Wright Medical and Edwards, amounted to King, Wright Medical and Edwards entering into a joint venture, thereby making Wright Medical and Edwards liable for all damages awarded against King.

27. Wright Medical and Edwards, negligently, willfully, recklessly and intentionally sold and/or provided to King, McNair and Teays Valley products which Wright Medical and Edwards knew were not reasonably suited for the uses being made by King and McNair but, nonetheless, negligently continued to sell those products to King, McNair and Teays Valley in order to enhance Wright Medical and Edwards' income to the detriment of King's patients, including the plaintiff.

28. Wright Medical and Edwards knew that the use of its products, equipment and medical devices by King and McNair were inappropriate for use in the operation performed on the plaintiff but, nonetheless, sold said product, equipment and medical device knowing of its improper use by King.

29. (a) On April 11, 2001, the Food and Drug Administration forwarded a "Warning Letter" to Wright Medical regarding the sale and marketing of Allomatrix. The FDA informed Wright Medical that its product was a medical device and was subject to the pre-

market notification requirements of the Federal Food, Drug, and Cosmetic Act. The FDA determined that Allomatrix was a medical device "because it is used to diagnose or treat a medical condition or to effect the structure or function of the body". In its April 11, 2001 correspondence, the FDA informed Wright Medical that because it did not have marketing clearance from the FDA, the continued marketing of Allomatrix was a violation of the law and that the FDA considered, until clearance was obtained from the FDA, that Allomatrix was "adulterated" under the Act, and that it was "misbranded". Wright Medical did not obtain marketing clearance from the FDA for Allomatrix until the year 2004.

(b)     Wright Medical and Edwards knew that the Allomatrix that was supplied to King, McNair and/or Teays Valley had been declared a medical device the United States Food and Drug Administration, and that Allomatrix could not be sold or distributed prior to receiving clearance from the FDA. Wright Medical and Edwards knew that at the time Allomatrix was supplied to King, McNair and/or Teays Valley clearance had not been obtained from the FDA for the sale and distribution of Allomatrix. Wright Medical and Edwards knew that the only manner in which Allomatrix could be legally sold or distributed to King, McNair and/or Teays Valley during the years 2002 and 2003, would be if Wright Medical received an investigational device exemption from the FDA, and an institutional review board had been established at Teays Valley for the use of that product. Wright Medical and Edwards knew that at the time Allomatrix was supplied to King, McNair and/or Teays Valley that no investigational device exemption had been issued to Wright Medical by the FDA, and no institutional review board had been established at Teays Valley for the use of Allomatrix. Nonetheless, Wright Medical andEdwards willfully, wantonly and intentionally sold, supplied and distributed Allomatrix to King, McNair and/or Teays Valley for use in the plaintiff's operation, in direct violation of the

prohibitions established by law. Wright Medical and Edwards knew that the informed consents necessary for the use of its product on the plaintiff had not and were obtained.

30. Regardless of the approval of Allomatrix, Wright Medical and Edwards knew that its use in surgical procedures being performed by King and McNair on the plaintiff was an inappropriate use of the product and the likelihood of the plaintiff having a successful outcome as a result of King and McNair's surgery was significantly impaired because of the improper use of Allomatrix by King and McNair. Nonetheless, Wright Medical and Edwards continued to sell and supply Allomatrix to King, McNair and/or Teays Valley's use.

31. The actions of Wright Medical and Edwards evidence a willful, wanton or reckless disregard of risk of harm to the plaintiff sufficient to allow the award of both compensatory and punitive damages.

## COUNT V
## EBI L.P.

32. Plaintiff restates and realleges all allegations contained in Counts I, II, III and IV, as if set out verbatim herein.

33. EBI knew or should have known that King did not have the required qualifications, training and expertise to use EBI's products, equipment and medical devices in the appropriate manner during plaintiff's surgery.

34. EBI was aware that King was using EBI's products, equipment, and medical devices in a manner not suitable for their intended use, and further knew that King was negligently performing surgeries using EBI's products, equipment and medical devices in an inappropriate manner.

35.     EBI, in supplying King, McNair and/or Teays Valley its products, equipment and medical devices, breached certain warranties owed to the plaintiff, including express and implied warranties and the warranty of fitness for a particular purpose.

36.     In selling its products, equipment and medical devices EBI warranted that said products were reasonably safe for their intended use, included the use to which they were put during the plaintiff's surgery.

37.     The products, equipment and medical devices sold by EBI, including ionic spacers and/or spinal growth stimulators, were not reasonably fit for their intended use, giving rise to a claim or cause of action for strict liability against EBI.

38.     EBI willfully, negligently, and carelessly failed to warn, inform, instruct and apprise the plaintiff that its products were not reasonably safe for use in the plaintiff's surgery due to the manner in which King and McNair were using the products.

39.     EBI, in manufacturing, selling and distributing products, equipment and medical devices, including ionic spacers and/or spinal stimulators, had the duty to use due care and diligence to the general public in general and to the plaintiff in particular, to reasonably ensure that its products were being used in a proper manner and that its products were reasonably safe for their intended use.

40.     The defendant EBI manufactured, sold and distributed products that were defective in that they were not reasonably safe for its intended use.

41.     EBI negligently, willfully, recklessly and intentionally sold and/or provided to King, McNair and/or Teays Valley products which EBI knew were not reasonably suited for the uses being made by King and McNair but, nonetheless, continued to sell these products to King,

McNair and/or Teays Valley in order to enhance EBI's income to the detriment of King's patients, including the plaintiff.

42.    At the time King and McNair performed surgery on the plaintiff, EBI was aware of King's use of Allomatrix, King's failure to use autogenous bone graft, and was further aware of the likelihood that no fusion would occur as a result of plaintiff's surgery was significantly increased.  At the time King and McNair performed surgery on the plaintiff, EBI was aware that King was using spinal stimulators on some patients.  EBI was further aware that the use of its spinal growth stimulators solely and in conjunction with the use of Allomatrix would provide no benefit to a surgical candidate. At the time King and McNair performed surgery on the plaintiff, EBI was aware that King was that using EBI's ionic spacers in a manner totally inconsistent with EBI's surgical technique manual for the ionic spacer.  EBI further was aware that King was using EBI's ionic spacer in a manner totally contradictory to the marketing clearance it had obtained for that product from the United States Food and Drug Administration.

43.    The actions between EBI and King constituted a joint venture, thereby making EBI liable for all damages awarded against King in this litigation.

44.    The actions of EBI evidence a willful, wanton or reckless disregard of risk of harm to the plaintiff sufficient to allow the award of both compensatory and punitive damages.

### COUNT VI
### Trespass, Assault and Battery

45.    Plaintiff restates and realleges all allegations contained in Counts I, II, III, IV and V hereinabove, as if fully set out herein.

46    McNair provided the services of a physician assistant or orthopedic physician assistant during the operative procedure that is the subject of this litigation.  He was not licensed to do so. His integral involvement in the operative procedure while not being qualified and while

being unlicensed amounts to a trespass against the plaintiff, as well as assault and battery. As the employer of McNair, Teays Valley is vicariously liable for the trespass, assault and battery committed by McNair through his participation in the plaintiff's operative procedure.

47.    As has been set forth in the Screening Certificate of Merit referenced in this Complaint, the operative procedure performed by King was both negligent and unnecessary. The actions of King in performing a negligent and unnecessary surgery upon the plaintiff amount to a trespass, assault and battery.

## COUNT VII
## Civil Conspiracy

48.    Plaintiff restates and realleges all allegations contained in Counts I, II, III IV, V and VI hereinabove, as if fully set out herein.

49.    EBI, Wright Medical, Edwards and Teays Valley, in conjunction with Molinaro and its employee McNair, and through the actions of King, conspired together in a civil conspiracy, which permitted and allowed King and McNair to perform negligent and unnecessary operative procedures on the plaintiff.   Each is liable under a claim of civil conspiracy.

## COUNT VIII
## Intentional and Negligent Infliction of Emotional Distress

50.    Plaintiff restates and realleges all allegations contained in Counts I, II, III, IV, V, VI and VII hereinabove, as if fully set out herein.

51.    Teays Valley in allowing McNair and King to perform negligent and unnecessary operative procedures on the plaintiff, and allowing an unlicensed physician assistant to participate in plaintiff's surgery, and in allowing King to perform operative procedures when Teays Valley knew or should have known that King did not have the appropriate qualifications

to be granted temporary or permanent credentials and privileges, constitutes the tort of intentional or negligent infliction of emotional distress on the plaintiff.

52. The actions of McNair and King, in performing negligent and unnecessary operation procedures, constitute a tort of intentional or negligent infliction of emotional distress on the plaintiff.

53. The actions of EBI, Wright Medical and Edwards in conjunction with the actions of King and McNair constitute a tort of intentional or negligent inflection of emotion distress.

## COUNT IX
## Tort of Outrage

54. Plaintiff restates and realleges all allegations contained in Counts I, II, III, IV, V, VI, VII and VIII hereinabove, as if fully set out herein.

55. The actions of Wright Medical, Edwards, EBI, Teays Valley, McNair and King, were so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and should be regarded as atrocious and utterly intolerable in a civilized community. The conduct of Wright Medical, Edwards, EBI, Teays Valley, McNair and King, taken together or individually, constitutes the tort of outrage.

## COUNT X
## Fraud and Deceit

56. Plaintiff restates and realleges all allegations contained in Counts I, II, III, IV, V, VI, VII, VIII and IX hereinabove, as if fully set out herein.

57. Teays Valley, through its credentialing and privileging process, held out both King and McNair to the public, and more particularly to this plaintiff, as being qualified and competent in the fields in which they had been granted credentials and privileges. McNair, in providing his assistance in the plaintiff's operative procedure as a physician assistant or

orthopedic physician assistant, held out to the plaintiff that he was competent and legally qualified to provide those services. King, in undertaking a physician-patient relationship with the plaintiff, held out to the plaintiff that he was qualified, competent, and trained in the operative procedures that he was performing on the plaintiff. The actions of Teays Valley, King and McNair, either individually or in conjunction, constituted a fraud on the plaintiff, thereby allowing a cause of action for fraud and deceit to arise as a result of the actions of the defendants.

58.    Plaintiff relied upon Teays Valley to appropriately credential and privilege both McNair and King, and to ensure that only competent physicians were allowed to practice at PGH. Plaintiff further relied upon the representations, both verbal and implied, by McNair and King that they were appropriately licensed and were competent to perform the operative procedures they conducted on plaintiff.

59.    Prior to surgery, King and/or McNair represented to the plaintiff that without surgery he would develop and continue in the future to develop significant difficulties that could lead to paralysis. King and/or McNair further represented that with surgery he would be as good as new. King and McNair knew that their representations were false. Plaintiff relied upon these representations in electing to undergo the surgery recommended by King and McNair. Plaintiff did not need the operative procedure represented by King and/or McNair as being necessary. The actions of King and McNair, either individually or in conjunction, constituted a fraud on the plaintiff, thereby allowing a cause of action for fraud and deceit to arise as a result of the actions of King and McNair.

60.    Wright Medical, Edwards and EBI knew that the use King and McNair were making of their products and medical devices were inappropriate, contraindicated, and violated the applicable standard of care. Nonetheless, Wright Medical, Edwards and EBI continued to

sell and supply Wright Medical's and EBI's products and medical devices for King and McNair's use in surgical procedures, including the surgical procedure performed on the plaintiff. Wright Medical, Edwards and EBI provided substantial assistance to King and McNair in their surgical procedures, and were integral in allowing King and McNair to use Wright Medical's and EBI's products and medical devices inappropriately.  Wright Medical, Edwards and EBI were either direct participants in the fraud committed by King and McNair, or conspired with King and McNair to commit fraud and deceit upon the plaintiff, thereby allowing a cause of action of fraud and deceit to arise as a result of the actions of Wright Medical, Edwards, and EBI.

### COUNT XI
### Joint Venture/Joint Enterprise

61.    Plaintiff restates and realleges all allegations contained in Counts I, II, III, IV, V, VI, VII, VIII, IX, and X hereinabove as if fully set out herein.

62.    At all times relevant to the allegations set forth in this Complaint, EBI, Wright Medical, Edwards, Teays Valley, McNair and King were involved in a joint venture or joint enterprise under West Virginia law.  As members of a joint venture or joint enterprise, each member of the joint venture or enterprise is liable for the negligent, willful, wanton, reckless or intentional actions of the other.  Therefore, EBI, Wright Medical, Edwards, Teays Valley, McNair and King are each jointly and severally liable for any damages that may be awarded against any of them for the negligent, willful, wanton, reckless and intentional acts that occurred during the operative procedure performed upon the plaintiff.

### COUNT XII
### Alter Ego/Piercing Corporate Veil

63.    Plaintiff restates and realleges all allegations contained in Counts I, II, III, IV, V, VI, VII, VIII, IX, X, and XI hereinabove, as if fully set out herein.

64.     Teays Valley, while a West Virginia corporation, is a wholly owned subsidiary of HCA.   While Teays Valley's only business involves the operation of a hospital in Putnam County, West Virginia, nonetheless it lists with the West Virginia Secretary of State its principal place of business as being in Nashville, Tennessee, which is where the corporate headquarters of HCA is located.   Teays Valley has a Board of Trustees, but according to the Bylaws of Teays Valley, in reality the Board of Trustees (consisting of West Virginia residents) is in effect advisory only, and does not control the financial operations of Teays Valley.

65.     HCA owned, operated, and controlled Teays Valley through a set of corporate enterprises.   The ownership scheme established by HCA consists of the following: HCA owns 100 percent of Healthtrust, which is the sole member of Hospital Corp, which owns 100 percent of Teays Valley, Healthtrust and Hospital Corp are non-operating holding companies that have no employees.   HCA is and was at all times relevant to the complaint the *de facto* corporate parent of Teays Valley, which had employees.

66.     HCA, Healthtrust, Hospital Corp and Teays Valley disregarded their respective corporate formalities and shared such unity of interest that they ceased to exist as a separate corporation, and Healthtrust, and/or Hospital Corp, and/or HCA became and is the alter ego of Teays Valley.

67.     Injustice or inequity would befall the plaintiff, and others, if the plaintiff were limited to seeking recovery solely against Teays Valley.   As was disclosed in litigation in the Circuit Court of Kanawha County, West Virginia in Civil Action Number 04-C-649, Teays Valley revealed that it, in an unaudited financial statement dated September 30, 2004, only had a net worth of Sixteen Million One Hundred Eighty Six Thousand One Hundred Forty Six Dollars $16,186,146.00. The unaudited income statement, for the nine (9) months ending September 30,

2004, shows that Teays Valley had a pre-tax net income loss exceeding Seven Hundred Thousand Dollars ($700,000.00). Plaintiff states, upon information and belief, that on or about the 15th day of November 2004, counsel for the plaintiff in this litigation forwarded, pursuant to the provisions of *West Virginia Code § 55-7B-6*, notices of claims and screening certificates of merit for approximately forty-nine (49) individuals who claim that they were injured as a result of the negligence of King, McNair, and Teays Valley. Upon information and belief, plaintiff believes that there are multiple other claims that will be asserted against the same individuals and entities. The number of plaintiffs, the significance of injuries, and the punitive damages which will be sought in those combined civil actions dwarf the net assets of Teays Valley and therefore create an injustice or inequity that would befall the plaintiff or limit the plaintiff in seeking recovery solely against Teays Valley. It would further create an injustice and inequity for HCA to have established a corporate scheme of ownership, controlled and directed the actions of Teays Valley, appointed its CEO, and otherwise directed its activities, and HCA and/or Healthtrust, and/or Hospital Corp be able to escape its liabilities.

68.     HCA, Healthtrust and Hospital Corp are legally liable for all obligations and liabilities owed by Teays Valley to the plaintiff.

## COUNT XIII
## Civil Conspiracy/Violation of Corporation Laws/Sham Transaction

69.     Plaintiff restates and realleges all allegations contained in Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI, and XII hereinabove, as if fully set out herein.

70.     The defendant, HCA, Healthtrust, and/or Hospital Corp directly, through its agents, servants, and employees operates and controls the business and operation of PGH disregarding the actual corporation Teays Valley. Such disregard includes, but is not limited to:

(a)     Failing to file and comply with corporate formalities including subsidiary registrations;

(b)     Operating a sham or pretend board of directors in the form of a "Board of Trustees";

(c)     PGH through its agents, servants and employees disregard of corporate formalities;

(d)     Disregard of the West Virginia Corporation Law that requires a West Virginia Corporation to operate solely under the jurisdiction, control, and management of its Board of Directors;

(e)     Using fictional officer filings with the West Virginia Secretary of State and other government agencies that list individuals as the "Officers" of Teays Valley when, in fact, such individuals do not fulfill any functions associated with being corporate officers in the management and operation of a corporation and being unanswerable to its Board of Directors; and

(f)     Using "mirrored" or identical officer filings for "subsidiary and corporations" operated by HCA, when, in fact, such subsidiary corporations are, in fact, the alter egos of the parent and the listed "mirror" officers do not fulfill the duties of corporate officers.

71.     HCA has created one or more "shell" corporations or incorporated business entities to isolate its purported ownership of Teays Valley, by inconsistently listing Teays Valley and PGH as subsidiaries of HCA in financial statements.  HCA intends to cloak or deceive the public and the judiciary while inserting shell entities as purported owners of Teays Valley. Included in such a plan is the purported ownership of Teays Valley stock by Hospital Corp, a

Delaware limited liability company incorrectly using the name "corporation" as a device, sham, or diversion and the ownership or alleged ownership of such limited liability company by Healthtrust, a Delaware corporation with no significant assets or business purpose. The use of such intermediate entities has no legitimate business purpose; such business entities were created solely for "asset protection" and constitute a sham, device or artifice to defraud creditors and the public including the Plaintiff.

72.     HCA in its business plan or scheme of "asset protection" has also incorporated and created a subsidiary insurance company to reportedly insure the liabilities of the shell entities owned by HCA, all as a part of a scheme or artifice to provide "asset protection" as a fraud, device and scheme upon the public and this plaintiff in particular.

73.     The agents, servants, and employees of defendant HCA directly own, operate, and control PGH. The use of various business entities and corporations such as Teays Valley, Hospital Corp, and Healthtrust as mere shams or devices to camouflage the true and direct ownership and operation of PGH by HCA is a fraud, device, and scheme upon the public and this plaintiff.

74.     HCA, Healthtrust and Hospital Corp are legally liable for all obligations and liabilities owed by Teays Valley to the plaintiff.

### COUNT XIV
### Damages

75.     Plaintiff restates and realleges all allegations contained in Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII and XIII as if set out verbatim herein.

76.     As a proximate result of the defendants' negligent, willful, wanton, reckless and intentional actions set forth in this Complaint, including, but not limited to claims for (a) medical malpractice, (b) negligent credentialing, privileging, recruitment, hiring, supervision and

retention, (c) breach of warranty, (d) failure to warn, (e) products liability, (f) negligent sale and distribution of medical products and devices, (g) lack of informed consent, (h) trespass and assault and battery, (i) joint venture/joint enterprise, (j) civil conspiracy, (k) intentional and negligent infliction of emotional distress, (l) fraud and deceit, and (m) the tort of outrage, the plaintiff was injured as a result of the actions of the defendants. Plaintiff has and will in the future suffer extreme pain, humiliation and embarrassment, and emotional distress and anguish; has and will in the future suffer psychological damages; has suffered permanent injuries and scarring; has and will in the future be prevented from engaging in normal activities; has and will in the future incur considerable medical and hospital expenses; and has or may incur lost wages and/or reduced earning capacity.

77.    The willful, wanton, intentional, and reckless actions of the defendants give rise to a claim for punitive damages.

**WHEREFORE**, plaintiff demands judgment, jointly and severally, against Teays Valley Health Services, Inc., d/b/a Putnam General Hospital, HCA, Inc., Healthtrust, Inc. – The Hospital Company, and Hospital Corp, L.L.C., John A. King, DO, David McNair, Wright Technology, Inc., Robert Edwards aka Bob Edwards and EBI L.P. for the allegations set forth in this complaint. Plaintiff seeks recovery against said defendants, jointly and severally, for both compensatory and punitive damages, plus prejudgment and post-judgment interest, attorneys' fees, costs, expenses, and all other damages allowed by West Virginia law.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

**SIDNEY V. BARKER**
By Counsel

Arden J. Curry, II, Esquire (WV Bar # 907)
Curry & Tolliver, P.L.L.C.
100 Kanawha Boulevard, West
P.O. Box 11866
Charleston, WV 25338-1866
(304) 343-7200

Jack D. Tolliver, M.D., J.D. (WV Bar # 8939)
Curry & Tolliver, P.L.L.C.
100 Kanawha Boulevard, West
P.O. Box 11866
Charleston, WV 25338-1866
(304) 343-7200

# OFFICE OF THE SECRETARY OF STATE
## STATE OF WEST VIRGINIA



**Betty Ireland**
**Secretary of State**

Building 1, Suite 157-K
1900 Kanawha Blvd., East
Charleston, West Virginia 25305
Telephone: 304-558-6000
Toll Free: 866-SOS-VOTE
www.wvsos.com

# LEGAL NOTICE

March 23, 2005

Donald A. Wright, Circuit Clerk
Putnam County Courthouse
3389 Winfield Road
Winfield, WV 25213-0358

Civil Action: 05-C-70

I am enclosing:

FILED
2005 MAR 28 PM 12: 18
DONALD A. WRIGHT, CLERK
PUTNAM CO. CIRCUIT COURT

| | | |
|---|---|---|
| ____ summons | __1__ original | |
| ____ notice | ____ affidavit | |
| ____ order | ____ answer | |
| ____ petition | ____ cross-claim | |
| ____ motion | ____ counterclaim | |
| ____ interrogatories | ____ request | |
| ____ suggestions | ____ demand | |
| ____ subpoena duces tecum | ____ default judgement | |
| ____ summons and complaint | ____ complaint | |
| ____ 3rd party summons and complaint | ____ notice of mechanic's lien | |
| ____ summons returned from post office | ____ suggestee execution | |
| __1__ certified return receipt | ____ summons and amended complaint | |

which was served on the Secretary at the State Capitol in her capacity as your statutory attorney-in-fact. According to law, I have accepted service of process in the name and on behalf of John A. King, CO.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about these documents directly to the court or to the plantiff's attorney, shown in the enclosed paper. Please do not call the Secretary of State's office.*

Sincerely,

Vicki Haught
Manager

# S U M M O N S

### CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

SIDNEY V. BARKER,

                                    **CIVIL ACTION NO.** OS-C-7O

                    Plaintiffs,

Vs.

JOHN A. KING, D.O.;
DAVID McNAIR;
TEAYS VALLEY HEALTH SERVICES, INC.,
    d/b/a PUTNAM GENERAL HOSPITAL;
HCA, INC.;
HEALTHTRUST, INC. – THE HOSPITAL COMPANY,
    a foreign corporation;
HOSPITAL CORP, L.L.C.;
WRIGHT MEDICAL TECHNOLOGY, INC.,
    a foreign corporation;
ROBERT EDWARDS, aka BOB EDWARDS;
and EBI L. P.
                    Defendants

**To the above-named Defendant:**

        IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required
to serve upon:

                        Arden J. Curry, II
                        Curry & Tolliver
                        P. O. Box 11866
                        Charleston, WV 25338

 plaintiff's attorney, an answer, including any related counterclaim  you may have, to the complaint filed

against you in the above-styled civil action, a true copy of which is herewith delivered to you.  You are

required to serve your answer within **30** days after service of this summons upon you, exclusive of the

day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded

in the complaint and you will be thereafter barred from asserting in another action any claim you may

have which must be asserted by counterclaim in the above-styled civil action.

Dated:_____**February** 7_____, 2005

                                    _____
                                    Clerk of Court

**2. Article Number**

7160 3901 9848 9214 9034

| COMPLETE THIS SECTION ON DELIVERY |
|---|

A. Received by (Please Print Clearly)   SAM Nonplegy

B. Date of Delivery   3-8-05

C. Signature   X _Sam Augh_     ☐ Agent  ☐ Addressee

D. Is delivery address different from Item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

**3. Service Type   CERTIFIED MAIL**

**4. Restricted Delivery? (Extra Fee)**   ☐ Yes

**1. Article Addressed to:**

05-C-70

John A. King, CO

11310 South Orange Blossom Trail

#232

Orlando, FL  32832-9421

PS Form 3811, July 2001          Domestic Return Receipt

---

```
            WV Secretary of State

Receipt #:                      480520
Station ID:                        M02

List Of Services

sp  s   s   John A King DO     $1,760.00

Total:                         $1,760.00

Payment Details:

Curry & Tolliver PLLC
k  2134                        $1,760.00

Original Transaction Date:    03/03/2005

Receipt Updated:              03/03/2005

        Thank You For Your Business!
```

13

## IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

SIDNEY V. BARKER,

        Plaintiff,

vs.                             **CIVIL ACTION NO. 05-C-70**

JOHN A. KING, DO, ET AL,

        Defendants.

### NOTICE

**TO:**   **John A. King, DO**
       11310 S. Orange Blossom Trail, Suite 232, Orlando, FL 32837

    The enclosed *summons and complaint* are served pursuant to Rule 4(d)(1)(E) of the West Virginia Rules of Civil Procedure.

    You must complete the acknowledgment part of this form and return one copy of the completed form to the Office of the Clerk of the Circuit Court of Putnam County, West Virginia, within **20** days.

    You must sign and date the acknowledgment. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

    If you do not complete and return the form to the Office of the Clerk of the Circuit Court of Putnam County within **20** days, you (or the party on whose behalf you are being served) may be required to pay any expenses incurred in serving a summons and complaint in any other manner permitted by law.

    If you do complete and return this form, you (or the party on whose behalf) you are being served) must answer the complaint within **20** days. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

    I declare that this Notice and Acknowledgment of Receipt of Summons and Complaint was mailed on _____4-27_____, 2005.

                    *Donald a. Wright Jr*
                    Clerk of Court
                    Putnam County Courthouse
                    3389 Winfield Road
                    Winfield, WV 25213

                    Date of Signature: April **27**  2005

## ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

I declare, under penalty of perjury, that I received a copy of the summons and of the complaint in the above-captioned matter at 11310 S. Orange Blossom Trail, Suite 232, Orlando, FL 32837.

_____

**Signature**

Relationship to Entity/Authority to Receive Service of Process

_____

Date of Signature: _____, 2005



## ACCEPTANCE OF SERVICE

I, **D. C. Offutt, Jr.,** Attorney at Law, practicing with Offutt, Fisher & Nord Law Firm, in

Huntington, West Virginia, being duly authorized, do hereby accept service of the

pleadings issued by the Circuit Court of Putnam County, West Virginia, in the following

lawsuit filed against our client, **Teays Valley Health Services, Inc., d/b/a Putnam**

**General Hospital.**


**Barker,** Sidney V. v. John A. King, DO et al
Complaint with Summons
~~CA No. 05-C-70~~


Date:  March 3, 2005

D. C. Offutt, Jr., Esquire
Offutt, Fisher & Nord
P. O. Box 2868
Huntington, WV 25728-2868
Tel: 304-529-2868
WV Bar #2773

S:\CB_Stells\CARS_1\Pleadings\OffutServce.aoc



## ACCEPTANCE OF SERVICE

I, **Stephen B. Farmer**, Attorney at Law, practicing with Farmer, Cline & Campbell Law Firm, in Charleston, West Virginia, being duly authorized, do hereby accept service of the Summons and Complaint/Amended Complaint issued by the Circuit Court of Putnam County, West Virginia, in the following lawsuits filed against our clients, **Wright Medical Technology, Inc. and Robert Edwards aka Bob Edwards.**

**Barker**, Sidney V. v. John A. King, DO
Complaint with Summons
**CA No. 05-C-70**

Dated: March 8, 2005

Stephen B. Farmer, Esquire
Farmer, Cline & Campbell PLLC
P. O. Box 3842
Charleston, WV 25338
Tel: 304-346-5990
WV Bar #1165

S:\Cli_8etc\CAR5.1\Pleadings\Farmer-WIA&E.doc

*17*

## ACCEPTANCE OF SERVICE

I, **Thomas J. Hurney**, Attorney at Law, practicing with the Law Firm of Jackson Kelly PLLC, in Charleston, West Virginia, being duly authorized, do hereby accept service of the pleadings filed in the Circuit Court of Putnam County, West Virginia, in the following lawsuit filed against our client, **David McNair.**

**Barker**, Sidney v. John A. King, DO et al
Complaint with Summons
**CA No. 05-C-70**

Date:  March 11, 2005

Thomas J. Hurney, Esquire
Jackson Kelly PLLC
P. O. Box 553
Charleston, WV 25322-0553
Tel: 304-340-1346
WV Bar #1833

18

## ACCEPTANCE OF SERVICE

I, **Richard D. Jones,** Attorney at Law, practicing with the Law Firm of Flaherty

Sensabaugh & Bonasso PLLC, in Charleston, West Virginia, being duly authorized, do

hereby accept service of the pleadings filed in the Circuit Court of Putnam County, West

Virginia, in the following lawsuit filed against our client, **HCA Inc., Healthtrust, Inc.—**

**The Hospital Company, and Hospital Corp, LLC.**


**Barker**, Sidney v. John A. King, DO et al
Complaint with Summons
**CA No. 05-C-70**

Date:  February 17, 2005

Richard D. Jones, Esquire
Flaherty Sensabaugh & Bonasso PLLC
P. O. Box 3843
Charleston, WV 25338-3843
Tel: 304-345-0200
WV Bar #1927

19

## ACCEPTANCE OF SERVICE

I, Neva G. Lusk, Attorney at Law, practicing with Spilman Thomas & Battle Law Firm, in

Charleston, West Virginia, being duly authorized, do hereby accept service of the

Summons and Complaint issued by the Circuit Court of Putnam County, West Virginia,

in the following lawsuit filed against our client, EBI L.P.


**Barker**, Sidney V. vs. John A. King, DO et al
Complaint with Summons
**CA No. 05-C-70**


Dated: February 8, 2005

Neva G. Lusk, Esquire
Spilman Thomas & Battle
P.O. Box 273
Charleston, WV 25321-0273
Tel: (304) 340-3866
Fax: (304) 340-3801
WV Bar #2274



# AFFIDAVIT OF SERVICE

**STATE OF FLORIDA,**
**COUNTY OF ORANGE, to-wit:**

JOE PLEASANT, after first being duly sworn, upon his oath deposes and says:

1.      I am an Investigator for Attorneys Legal Service, of Orlando, Florida.

2.      On March 22, 2005, I visited a gated community located in Orlando, Florida and ascertained with the Security Guard that John A. King was registered in the security computer as having access to the address of 10632 Woodchase Circle, Orlando, Florida.

3.      I then went to the address of 10632 Woodchase Circle, Orlando, Florida, and asked for John A. King and was informed by Michael Tanner that he was out of town. I then personally served upon Michael Tanner, husband of Lois Tanner, the summons and complaint in the case of **Sidney Barker Complaint w/Summons No. 05-C-70,** filed in the Circuit Court of Putnam County, West Virginia.

4.      I further ascertained from Michael Tanner that Lois Tanner was the sister of John A. King and that John A. King had access to the address of 10632 Woodchase Circle, Orlando, Florida.

5.      And further Affiant saith naught.

Joe Pleasant

Taken, subscribed and sworn to before me this _3/_ day of _March_, 2005.

My Commission expires _____.

DAVID J. BIDDLE
Notary Public - State of Florida
My Commission Expires May 6, 2007
Commission # DD189413
Bonded By National Notary Assn.

_____
NOTARY PUBLIC

[NOTARY SEAL]

# SUMMONS

## CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

SIDNEY V. BARKER,

                          **CIVIL ACTION NO.** _05 C-70_

                Plaintiffs,

Vs.

JOHN A. KING, D.O.
DAVID McNAIR;
TEAYS VALLEY HEALTH SERVICES, INC.,
  d/b/a PUTNAM GENERAL HOSPITAL;
HCA, INC.;
HEALTHTRUST, INC. – THE HOSPITAL COMPANY,
  a foreign corporation;
HOSPITAL CORP, L.L.C.;
WRIGHT MEDICAL TECHNOLOGY, INC.,
  a foreign corporation;
ROBERT EDWARDS, aka BOB EDWARDS;
and EBI L. P.

                Defendants

**To the above-named Defendant:**

      IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon:

                Arden J. Curry, II
                Curry & Tolliver
                P. O. Box 11866
                Charleston, WV 25338

plaintiff's attorney, an answer, including any related counterclaim you may have, to the complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your answer within **30 days** after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

Dated:   **February**   **7**   , **2005**

                              _Donald A. Wright IPH._
                              Clerk of Court

26

### IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

SIDNEY V. BARKER

        Plaintiff,

vs.                             CIVIL ACTION NO. 05-C-70

JOHN A. KING, D.O.; DAVID McNAIR;
TEAYS VALLEY HEALTH SERVICES, INC.,
d/b/a PUTNAM GENERAL HOSPITAL;
HCA, INC.; HEALTHTRUST, INC. –
THE HOSPITAL COMPANY, a Foreign
Corporation; and HOSPITAL CORP, L.L.C.;
WRIGHT MEDICAL TECHNOLOGY, INC.;
ROBERT EDWARDS aka BOB EDWARDS;
and EBI L.P.

        Defendants.

### DEFENDANT EBI, L.P.'S ANSWER TO PLAINTIFF'S COMPLAINT AND CROSS-CLAIM OF EBI, L.P.

#### Preface to Complaint

    With respect to the allegations contained in the Plaintiff's "Preface to Complaint," EBI,

L.P. ("EBI") admits that it received a Notice of Claim regarding Plaintiff Sidney Barker.  EBI

denies that it received an amended complaint containing allegations of medical malpractice.  EBI

denies any and all assertions or allegations against EBI as stated in the Notice of Claim and/or

Certificate of Merit and/or Plaintiff's Preface to Complaint.

#### COUNT I
#### General Allegations

    1.  EBI lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph 1 of Plaintiff's Complaint.

    2.  Upon information and belief, EBI admits the allegations contained in paragraph 2.

3. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3.

4. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 and, therefore, denies the same.

5. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 and, therefore, denies the same.

6. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 and, therefore, denies the same.

7. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 and, therefore, denies the same.

8. Upon information and belief, EBI admits that it filled an order for an implantable stimulator, which medical device King utilized in the Plaintiff's surgical procedure. EBI is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 8 and, therefore, denies the same.

9. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 and, therefore, denies the same.

## COUNT II
### Negligent Credentialing, Privileging Recruitment, Hiring, Supervision and Retention

10. EBI incorporates by reference its responses to all other paragraphs of Plaintiff's Complaint as if set forth herein at length.

11. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 and, therefore, denies the same.

12. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 and, therefore, denies the same.

13. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13, subparts (a) thought (p), and, therefore, denies the same.

## COUNT III
### Trespass, Assault and Battery

14. EBI incorporates by reference its responses to all other paragraphs of Plaintiff's Complaint as if set forth herein at length.

15. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 and, therefore, denies the same.

16. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 and, therefore, denies the same.

## COUNT IV
### Wright Medical and Edwards

17. EBI incorporates by reference its responses to all other paragraphs of Plaintiff's Complaint as if set forth herein at length.

18. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 and, therefore, denies the same.

19. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 and, therefore, denies the same.

20. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 and, therefore, denies the same.

21. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 and, therefore, denies the same.

22. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 and, therefore, denies the same.

23. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 and, therefore, denies the same.

24. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 and, therefore, denies the same.

25. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 and, therefore, denies the same.

26. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 and, therefore, denies the same.

27. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 and, therefore, denies the same.

28. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 and, therefore, denies the same.

29. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29, subparts (a) and (b), and, therefore, denies the same.

30. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 and, therefore, denies the same.

31. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 and, therefore, denies the same.

## COUNT V
## EBI, L.P.

32. EBI incorporates by reference its responses to all other paragraphs of Plaintiff's Complaint as if set forth herein at length.

33. EBI denies the allegations contained in paragraph 33.

34. EBI denies the allegations contained in paragraph 34.

35. EBI denies the allegations contained in paragraph 35.

36. The allegations contained in paragraph 36 state a legal conclusion to which no responsive pleading is required. To the extent a response is required, EBI denies the allegations contained in paragraph 36.

37. EBI denies the allegations contained in paragraph 37.

38. EBI denies the allegations contained in paragraph 38.

39. The allegations contained in paragraph 39 state a legal conclusion to which no responsive pleading is required. To the extent a response is required, EBI denies the allegations contained in paragraph 39.

40. EBI denies the allegations contained in paragraph 40.

41. EBI denies the allegations contained in paragraph 41.

42. EBI admits that it was aware of King's use of Allomatrix on some patients, that at times King decided in his medical judgment not to use autogenous bone graft, and that King was using spinal stimulators on some patients. EBI denies the remaining allegations contained in paragraph 42.

43. EBI denies the allegations contained in paragraph 43.

44. EBI denies the allegations contained in paragraph 44.

## COUNT VI
### Trespass, Assault and Battery[1]

45. EBI incorporates by reference its responses to all other paragraphs of Plaintiff's Complaint as if set forth herein at length.

46. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46 and, therefore, denies the same.

---

[1] The count "Trespass, Assault and Battery" is duplicated verbatim as Count III and Count VI.

47. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 47 and, therefore, denies the same.

## COUNT VII
### Civil Conspiracy

48. EBI incorporates by reference its responses to all other paragraphs of Plaintiff's Complaint as if set forth herein at length.

49. EBI denies the allegations contained in paragraph 49.

## COUNT VIII
### Intentional and Negligent Infliction of Emotional Distress

50. EBI incorporates by reference its responses to all other paragraphs of Plaintiff's Complaint as if set forth herein at length.

51. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 51 and, therefore, denies the same.

52. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 52 and, therefore, denies the same.

53. EBI denies the allegations contained in paragraph 53.

## COUNT IX
### Tort of Outrage

54. EBI incorporates by reference its responses to all other paragraphs of Plaintiff's Complaint as if set forth herein at length.

55. EBI denies the allegations contained in paragraph 55.

## COUNT X
### Fraud and Deceit

56. EBI incorporates by reference its responses to all other paragraphs of Plaintiff's Complaint as if set forth herein at length.

57. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 57 and, therefore, denies the same.

58. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 58 and, therefore, denies the same.

59. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 59 and, therefore, denies the same.

60. EBI denies the allegations contained in paragraph 60.

## COUNT XI
### Joint Venture/Joint Enterprise

61. EBI incorporates by reference its responses to all other paragraphs of Plaintiff's Complaint as if set forth herein at length.

62. EBI denies the allegations contained in paragraph 62.

## COUNT XII
### Alter Ego/Piercing Corporate Veil

63. EBI incorporates by reference its responses to all other paragraphs of Plaintiff's Complaint as if set forth herein at length.

64. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 64 and, therefore, denies the same.

65. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 65 and, therefore, denies the same.

66. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 66 and, therefore, denies the same.

67. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 67 and, therefore, denies the same.

68. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68 and, therefore, denies the same.

## COUNT XIII
### Civil Conspiracy/Violation of Corporation Laws/Sham Transaction

69. EBI incorporates by reference its responses to all other paragraphs of Plaintiff's Complaint as if set forth herein at length.

70. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 70, subparts (a) through (f), and, therefore, denies the same.

71. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 71 and, therefore, denies the same.

72. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 72 and, therefore, denies the same.

73. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 73 and, therefore, denies the same.

74. EBI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 74 and, therefore, denies the same.

## COUNT XIV
### Damages

75. EBI incorporates by reference its responses to all other paragraphs of Plaintiff's Complaint as if set forth herein at length.

76. EBI denies the allegations contained in paragraph 76 of the Plaintiff's Complaint insofar as they are directed to EBI and/or related to its products.  EBI denies that Plaintiff is entitled to recover any damages whatsoever from EBI.  To the extent the allegations in paragraph

76 concern another Defendant, EBI is without knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, denies the same.

77. EBI denies the allegations contained in paragraph 77 of the Plaintiff's Complaint insofar as they are directed to EBI and/or related to its products. EBI denies that Plaintiff is entitled to recover any damages whatsoever from EBI. To the extent the allegations in paragraph 77 concern another Defendant, EBI is without knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, denies the same.

78. EBI expressly denies all assertions or allegations contained in the Plaintiff's Complaint not expressly admitted herein.

79. EBI denies that any of its products or actions caused or contributed to Plaintiff's alleged injuries and/or damages and that Plaintiff is entitled to any of the damages or relief sought against EBI.

**WHEREFORE**, EBI demands judgment in its favor against Plaintiff along with such other legal and equitable relief as this court deems just and appropriate.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim against EBI upon which relief may be granted.

### SECOND DEFENSE

EBI avers that Plaintiff's alleged damages, if any, were caused by the negligence, strict liability, or fault of third parties over whom EBI does not have control and for whom EBI is not responsible.

9

## THIRD DEFENSE

In the event EBI is found to have been at fault, which fault is specifically denied, any such fault or negligence was passive in comparison to the primary and active fault and/or negligence of persons, parties, or entities for which EBI is not responsible and may not be found legally liable therefor, thus barring any recovery against EBI.

## FOURTH DEFENSE

In the event that a third-party's negligence is found to have been the sole and proximate cause of any injury sustained by Plaintiff, EBI is entitled to have any judgment against it reduced by the percentage of fault attributable to the third-party.

## FIFTH DEFENSE

The EBI products at issue in Plaintiff's Complaint are medical devices that may be used only by a licensed physician. At all pertinent times, the warnings, labels, and instructions which accompanied the EBI products at issue were sufficient to inform physicians of the FDA-approved uses of those products and the risks of use of those products and enable physicians to use these devices in an appropriate manner. Plaintiff's recovery is, therefore, barred by the learned intermediary doctrine.

## SIXTH DEFENSE

EBI calls for strict proof that any of its products were involved in any act, omission or event alleged in Plaintiff's Complaint.

## SEVENTH DEFENSE

There is no proximate causation or cause in fact between Plaintiff's alleged damages and any alleged act, omission, breach of duty, or representation made by EBI.

### EIGHTH DEFENSE

Any and all claims of Plaintiff are barred by virtue of the fact that the EBI medical devices at issue and their labels and warnings were approved by the United States Food and Drug Administration.

### NINTH DEFENSE

Any EBI products at issue conformed to the then existing state of the art, scientific and/or technical knowledge in design and manufacture and were marketed, labeled, and promoted properly.

### TENTH DEFENSE

EBI avers that its products were fit for their use intended, and free of defects in design, composition and manufacture upon leaving EBI's control. EBI further avers that any subsequent incident involving an EBI product resulted from misuse, mistreatment, or abuse of the product by learned intermediaries, parties, or person(s), or entities, or others for which EBI has no legal responsibility.

### ELEVENTH DEFENSE

Prior to the use of the EBI products alleged to be at issue, Plaintiff's learned intermediary Dr. King was properly advised of the risks and hazards associated with these EBI products. Therefore, Plaintiff's claims are barred in whole or in part by the learned intermediary doctrine and the sophisticated user doctrine.

### TWELFTH DEFENSE

Any EBI medical device at issue in Plaintiff's Complaint was selected and utilized according to the medical judgment of Plaintiff's treating physicians, including Defendant King.

### THIRTEENTH DEFENSE

The public interest and benefit in the availability of the subject product, a medical device, preclude liability for any risks, if any, resulting from such activities that were unavoidable given the state of human knowledge at the time those activities were undertaken. With respect to Plaintiff's claims, if it is determined that there is a risk inherent in the subject product, such risk, if any, is outweighed by the benefits.

### FOURTEENTH DEFENSE

Plaintiff's claims are barred or limited by Comment k to Section 402A of the RESTATEMENT (SECOND) OF TORTS.

### FIFTEENTH DEFENSE

If after a trial on the merits, any fault is proportioned against EBI, which fault is specifically denied, then EBI affirmatively asserts its right to a set off and/or credit for any settlements made with Plaintiff including those perfected before, during and through trial of this matter.

### SIXTEENTH DEFENSE

EBI pleads all defenses made available to it by the West Virginia law governing products liability, including but not limited to:

a. The products were not defective or substandard;

b. Product abuse and/or misuse occurred;

c. The products were sold to a sophisticated user and/or purchaser of the product;

d. The alleged dangerous characteristics of the products were known or obvious;

e. Plaintiff's alleged damages resulted solely from third-party fault;

    f.   The products contained adequate warnings;

    g.   The products were not unreasonably dangerous for its particular use at the time of its alleged failure;

    h.   Plaintiff's damages were not caused by a defect in the products.

### SEVENTEENTH DEFENSE

Plaintiff's injuries, if any, were caused by acts, omissions and/or conditions that intervened in time and supersede any alleged liability of EBI.

### EIGHTEENTH DEFENSE

Each purported cause of action in the Complaint is barred, in whole or in part, by the lack of a defect since the subject product was properly prepared in accordance with the applicable standard of care.

### NINETEENTH DEFENSE

All acts performed in the design, testing, manufacture, labeling, marketing and distribution of EBI's products, including those at issue in Plaintiff's Complaint, were in conformity with the "state of the art" existing at the time of such design, manufacture, labeling and distribution, and public policy requires that liability not be imposed upon EBI for untold risks not known at the time of manufacture, design, labeling and distribution of the alleged product giving rise to this action. The then current state of medical and scientific knowledge and practice was such that EBI could not reasonably know that any EBI product might pose an unreasonable risk of harm (which unreasonable risk of harm EBI expressly denies) when used in normal and foreseeable manners.

### TWENTIETH DEFENSE

Plaintiff's claims, if any, resulted from preexisting or unrelated medical, genetic, or environmental conditions, diseases, or illnesses of the Plaintiff, or from unforeseen idiosyncratic responses peculiar to Plaintiff and not found in the general public, and unknown or unknowable to EBI. To the extent that any of the injuries and expenses claimed by Plaintiff was a result of such preexisting or unrelated medical, genetic, or environmental conditions, diseases or illnesses, or unforeseeable idiosyncratic responses, and were accordingly not reasonably foreseeable, Plaintiff's claims against EBI are barred.

### TWENTY-FIRST DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of federal preemption.

### TWENTY-SECOND DEFENSE

Plaintiff's claims are barred because the use of these products were generally recognized as safe and effective pursuant to conditions established by the United States Food and Drug Administration and applicable regulations, including packaging and labeling regulations.

### TWENTY-THIRD DEFENSE

At all times relevant to the allegations set forth in the Plaintiff's Complaint, EBI did not know, and in light of the then existing and reasonably available scientific and technological knowledge, could not have known of: (1) the design characteristics, if any, that allegedly caused the injuries and damages complained of in the Complaint; (2) the alleged danger of any such design characteristic; and, (3) any scientifically and technologically feasible and economically practical alternative design. EBI further avers that the injuries and damages complained of in the allegations set forth in the Plaintiff's Complaint were not proximately caused by the lack of any such alternative design.

14

## TWENTY-FOURTH DEFENSE

Any claim for punitive damages against EBI violates EBI's right to protection for "excessive fines" as provided in the Eighth Amendment of the United States Constitution and Article 3, Section 5 of the Constitution of the State of West Virginia and violates EBI's right to substantive due process as provided in the Fifth and Fourteenth Amendments of the United States Constitution and the Constitution of the State of West Virginia. Therefore, Plaintiff's Complaint fails to state a cause of action upon which relief can be granted in regard to punitive damages against EBI.

## TWENTY-FIFTH DEFENSE

Any claim of Plaintiff for punitive damages against EBI violates EBI's rights to procedural due process under the Fourteenth Amendment of the United States Constitution and the Constitution of the State of West Virginia and, therefore, fails to state a cause of action upon which relief can be granted.

## TWENTY-SIXTH DEFENSE

EBI did not participate, engage, or assist in any act or conduct which could form the basis of an award of punitive damages and punitive damages are, therefore, not recoverable to any extent whatsoever against EBI.

## TWENTY-SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because EBI's advertisements and labeling with respect to the subject product were not false or misleading and, therefore, constitute protected commercial speech under the applicable provisions of the West Virginia and/or United States Constitution.

### TWENTY-EIGHTH DEFENSE

Plaintiff's breach of warranty claims are barred by a lack of privity between Plaintiff and

EBI and because Plaintiff failed to provide EBI with reasonable or adequate notice of the alleged

breach of any such purported warranties.

### TWENTY-NINTH DEFENSE

EBI avers that its product or products were fit for the use intended, surgical implantation

by a medical doctor, and free of defects in design, composition and manufacture upon leaving

EBI's control.

### THIRTIETH DEFENSE

Plaintiff has failed to state a claim of fraud with the requisite degree of specificity.

### THIRTY-FIRST DEFENSE

EBI is entitled to the benefit of all defenses and presumptions contained in, and arising

from, any rule of law or statute of West Virginia or any other state whose substantive law

controls this action.

### THIRTY-SECOND DEFENSE

EBI reserves the right to assert any of the following affirmative defenses which discovery

may reveal to be appropriate: lack of jurisdiction over subject matter, lack of jurisdiction over

person, improper venue, insufficiency of process, insufficiency of service of process, and any

additional affirmative defenses which discovery reveals appropriate.

### THIRTY-THIRD DEFENSE

EBI asserts the defense of primary jurisdiction.  All or some of the Plaintiff's claims

against EBI are subject to the primary jurisdiction of the Food and Drug Administration

("FDA"). As such, these claims should be transferred to the FDA for administrative resolution while the remaining claims against EBI are stayed.

### THIRTY-FOURTH DEFENSE

"Off-label" use of medical devices is recognized by the United States Food and Drug Administration and the United States Supreme Court as a common and accepted practice. EBI, as a medical device manufacturer, is not responsible for any injuries or damages to Plaintiff stemming from a physician's off-label use of an EBI product.

### THIRTY-FIFTH DEFENSE

If after a trial on the merits, any fault is proportioned against EBI, which fault is specifically denied, EBI is entitled to each of the benefits conferred by West Virginia's Medical Malpractice Liability Act, including several, as opposed to joint, liability with any other Defendants.

### THIRTY-SIXTH DEFENSE

If after a trial on the merits, any fault is proportioned against EBI, which fault is specifically denied, EBI is entitled to each of the benefits conferred by West Virginia's Medical Malpractice Liability Act, including the applicable limits of non-economic damages.

### THIRTY-SEVENTH DEFENSE

If after a trial on the merits, any fault is proportioned against EBI, which fault is specifically denied, EBI is entitled to each of the benefits conferred by West Virginia's Medical Malpractice Liability Act, including an off-set of damages from all collateral sources.

### THIRTY- EIGHTH DEFENSE

Plaintiff's claims for "Tort of Outrage" and intentional infliction of emotional distress are duplicative of one another. Plaintiff cannot recover under both legal theories.

### THIRTY-NINTH DEFENSE

EBI hereby adopts and incorporates by reference all defenses asserted by other defendants to this action.

### FORTIETH DEFENSE

Because Plaintiff has asserted that EBI is jointly liable with all other defendants for all claims, which allegation EBI expressly denies, EBI asserts all defenses available each other defendant to this action, including, but not limited to, immunity from damages under the Health Care Quality Improvement Act, 42 U.S.C. § 11101. *et seq.*

### CROSS-CLAIM OF EBI, L.P. AGAINST CO-DEFENDANT

Comes now Defendant EBI, L.P. ("EBI"), pursuant to Rule 13(g) of the West Virginia Rules of Civil Procedure, and for its cross-claim against co-defendant Teays Valley Health Services, Inc., d/b/a Putnam General Hospital ("Teays Valley"), EBI states the following:

1.      Plaintiff has asserted various causes of action against the Defendants individually and collectively, including but not limited to, negligent credentialing, medical malpractice, intentional and negligent infliction of emotional distress, product liability, fraud and deceit, and joint venture.

2.      EBI committed no wrongful acts whatsoever against Plaintiff. Plaintiff is entitled to no remedy or recovery whatsoever from EBI.

3.      In the event it is found that Plaintiff is entitled to any recovery and/or remedy against EBI. the right to any recovery or remedy being specifically denied, then EBI alleges that this recovery and/or remedy are the direct and proximate result of the actions of Teays Valley for the reasons as set forth against them in Plaintiff's Complaint.

18

4.      Thus, in the event it is determined that EBI is liable for damages to Plaintiff, which liability is expressly denied, then EBI is entitled to receive a pro-rata share of the amount of the judgment from Teays Valley under the doctrines of implied indemnity and/or contribution.

WHEREFORE, Defendant EBI denies any and all liability to Plaintiff and to any other party, and asserts its cross-claim against Teays Valley and seeks judgment in its favor against Plaintiff, or in the alternative against Teays Valley, along with its costs, attorney fees, and any other relief such as this Court deems appropriate.

**EBI, L.P.**

**By SPILMAN THOMAS & BATTLE PLLC**

Neva G. Lusk (WV State Bar #2274)
James S. Crockett, Jr. (WV State Bar #9229)
Lisa J. Bray (WV State Bar #7696)
Spilman Thomas & Battle, PLLC
The Spilman Center
300 Kanawha Boulevard, East (25301)
P.O. Box 273
Charleston, WV 25321-0273
304-340-3800
304-340-3801 (fax)

362253

19

2/

## IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

2005 JUN 21   AM 8: 53

SIDNEY V. BARKER,

DONALD          RIGHT CLERK
PUTNAM          IT COURT

        Plaintiff,

vs.                                                    **CIVIL ACTION NO. 05-C-70**

JOHN A. KING, D.O., ET AL,

        Defendants.

### AFFIDAVIT

STATE OF WEST VIRGINIA,
COUNTY OF KANAWHA,

      ARDEN J. CURRY II, after being first duly sworn, upon his oath deposes and says as follows:

      (1)     I am counsel for the plaintiff in the above-styled litigation.

      (2)     On the 4th day of March 2005, by certified mail, return receipt requested, I forwarded a copy of the Complaint and Summons in this litigation to John A. King, DO at his address of 11310 South Orange Blossom Trail, Orlando, Florida 32832-9421.

      (3)     John A. King has listed the above address as his correct mailing address in (a) pleadings filed in the case of *Cecil Carter and Rita Carter v. John King, et al*, Civil Action No. 03-C-216, filed in the Circuit Court of Putnam County, West Virginia; (b) in pleadings filed in the case of *John A. King, DO v. The State Journal LLC*, Civil Action No. 2:04-01071, filed in the United States District Court for the Southern District of West Virginia, at Charleston; (c) in pleadings filed in the case of *John A. King, DO v. Daily Gazette Company, et al*, Civil Action No. 2:04-cv-01046, filed in the United States District Court for the Southern District of West Virginia, at Charleston; (d) in pleadings filed in the case of *John A. King, DO v. Edgar D. Dawson, M.D.,* Civil Action No. 2:05-cv-00746-RGK-Mc, filed in the United States District Court, Central District of California, Western Division-Los Angeles; and (e) in pleadings filed in

1

the case of *John A. King, DO v. Teays Valley Health Services, Inc., et al*, Civil Action No. 2:05-0463, filed in the United States District Court for the Southern District of West Virginia, at Huntington.

(4)     On the 8th day of March 2005, Shirley Melendez signed the certified mail return receipt card for the service of the pleadings and summons in this matter. A copy of the signed return receipt card is attached and made a part of this Affidavit.

(5)     The address of 11310 South Orange Blossom Trail, Orlando, Florida 32837-9421 is a UPS Store owned by Sam Nompleggi. On the 14th day of April 2005, Curry & Tolliver PLLC confirmed that Shirley Melendez was employed at this UPS store.

(6)     John A. King authorized the UPS Store owned and operated by Sam Nompleggi to be an authorized agent to receive documents transmitted to King through the United States Mail and otherwise. Attached to and made a part of this Affidavit is the contract between John A. King and the UPS Store at 11310 South Orange Blossom Trail, Orlando, Florida 32837-9421.

(7)     Service of process in the manner described above complies with West Virginia Rule of Civil Procedure 4(b)(1)(C), in that appropriate service has been made by delivering a copy of the summons and complaint to an agent or attorney in fact authorized by John King's own appointment to receive or accept service on his behalf.

(8)     At the request of Curry & Tolliver PLLC, the Clerk of the Circuit Court of Putnam County, West Virginia forwarded a copy of the summons and complaints in this litigation, by first class mail, postage prepaid, to John A. King, DO, together with two copies of a Notice and Acknowledgment conforming substantially to Form 14 of the West Virginia Rules of Civil Procedure, along with a return envelope postage prepaid, addressed back to the Clerk of the Circuit Court of Putnam County, West Virginia. The records of the Clerk of the Circuit Court of

Putnam County, West Virginia, reflect that the pleadings and summons were forwarded to John A. King, DO in the manner described above.

(9)    Service of process in the manner described above complies with the provisions of West Virginia Rule of Civil Procedure 4(b)(1)(E), in that the Clerk has forwarded a copy of the pleadings and summons to John A. King, DO, first class mail, postage prepaid, together with two copies of a Notice and Acknowledgment conforming substantially to Form 14 and a return envelope, postage prepaid, addressed to the Clerk.

(10)    West Virginia Rule of Civil Procedure 4(e)(2) provides that if a plaintiff knows the residence of a defendant upon whom service has been unsuccessfully attempted, as described in Rule 4(e)(1)(E), or when a plaintiff knows the residence of a non-resident defendant which has no appointed or statutory agent or attorney in fact in the State of West Virginia upon whom service may be had, a plaintiff may obtain constructive service of the summons and complaint upon such defendant by the method set forth in West Virginia Rule of Civil Procedure 4(b)(1)(D).

(11)    Service of process in the manner described in paragraphs (2) through (9) above complies with West Virginia Rule of Civil Procedure 4(e)(2) in that the plaintiff knows of the address of John A. King and has obtained constructive service of the pleadings and summons in the manner prescribed in WVRCP 4(b)(1)(D).

(12)    In the case of *United States of America ex rel Jean Loper and John A. King, DO vs. Donalsonville Hospital, Inc., et al*, Civil Action No. 6:01-CV-41 [HL] in the United States District Court for the Middle District of Georgia, Thomasville Division, the deposition of John A. King, DO was taken on the 8th day of September 2004. In that deposition John A. King was asked where and with whom he resided. King responded, on page 9 of that deposition, that he

resided with relatives, including a sister whose name was "Lois Tanner", who resides in Orlando, Florida.

(13)   Curry & Tolliver PLLC retained the services of an investigator for Attorneys Legal Service of Orlando, Florida in order to determine the correct address for Lois Tanner in Orlando, Florida and to effectuate service of process upon John A. King.  Curry & Tolliver PLLC has filed with the Clerk of the Circuit Court of Putnam County, West Virginia, an Affidavit from Joe Pleasant, an investigator for Attorneys Legal Service, of Orlando, Florida, which reflects that the address of 10632 Woodchase Circle, Orlando, Florida 32836, is the correct residence address for Michael and Lois Tanner.  Joe Pleasant then went to the residence address and ascertained through the security officer that John A. King was registered in the security computer as having access to the address of 10632 Woodchase Circle, Orlando, Florida 32836.  Joe Pleasant thereafter went to the residence address, asked for John A. King and was informed by Michael Tanner, the husband of Lois Tanner that John A. King was out of town. Joe Pleasant then personally served upon Michael Tanner, husband of Lois Tanner, the pleadings and summons in this litigation.

(14)   Service of process in the manner described above complies with West Virginia Rule of Civil Procedure 4(b)(1)(B), in that a copy of the summons and complaints was delivered to King's dwelling place or usual place of abode to a member of his family above the age of 16, who was informed of the purport of the summons and complaint.

(15)   West Virginia Code § 56-3-33 provides that if a non-resident engages in certain enumerated activities, including "causing tortious injury by an act or omission in this state", then the Secretary of State for the State of West Virginia is deemed to be appointed by the non-resident as his or her agent for the acceptance of service of process.  A non-resident includes any person who is not a resident of the state, or a resident who has moved from the state subsequent

to engaging in such act or acts. The complaints filed in this litigation allege that John A. King caused tortious injury to the plaintiff through medical malpractice and by other willful, intentional and deliberate acts or omissions which occurred in the State of West Virginia and, more particularly, in Putnam County, West Virginia.

(16)    Pursuant to the provisions of West Virginia Code § 56-3-33, Curry & Tolliver PLLC delivered the original and two copies of both the summons and complaints and the fee required under the West Virginia Code, to the Secretary of State seeking service of process upon John A. King.   Service by the West Virginia Secretary of State under West Virginia Code § 56-3-33 is reflected in the returns provided by the West Virginia Secretary of State to the Clerk of the Circuit Court of Putnam County, West Virginia.

(17)    Service of process in the manner described above complies with the provisions of West Virginia Code § 56-3-33, in that John A. King is a non-resident who caused tortious injury by acts or omissions in this state, and the Secretary of State of the State of West Virginia is deemed to be appointed his agent for service of process.

And further affiant saith naught.

_____
Arden J. Curry, II

Taken, subscribed and sworn to before me this 20th day of June 2005.

My commission expires the 10th day of May 2011.

_____
NOTARY PUBLIC

NOTARY    OFFICIAL SEAL
STATE OF WEST VIRGINIA
NOTARY PUBLIC
MARGARET C. SCHARF
2308 FOREST CIRCLE
SOUTH CHARLESTON, WV 25303-2112
My Commission Expires May 10, 2011

■ Co    e Items 1, 2, and 3. Also complete
   Item     r Restricted Delivery is desired.
■ Print your name and address on the reverse
   so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
   or on the front if space permits.

A. Si      ☐ Agent
X  _Shirley Mahaney_      ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
   Shirley Mahaney    3/8

1. Article Addressed to:

John A. King
11310 South Orange Blossom Trail
Orlando, FL  32832-9421

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)    7003 2260 0004 4472 5798

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ $1.95 |
| Certified Fee | $2.30 |
| Return Receipt Fee (Endorsement Required) | $1.75 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $39.00 |

0701
19      Postmark
        Here

02/04/2005

Sent To  John A. King
Street, Apt. No.;  11310 So. Orangle Blossom Tr
or PO Box No.
City, State, ZIP+4  Orlando, FL  32832-9421

7003 2260 0004 4472 5798

PS Form 3800, June 2002    See Reverse for Instructions

■ Co    e items 1, 2, and 3. Also complete
item.  .. Restricted Delivery is desired;
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

A. Signature
X __Shirley Malender__   □ Agent
                          □ Addressee

B. Received by ( Printed Name )   C. Date of Delivery
__Shirley Malender__

1. Article Addressed to:

John A. King
11310 South Orange Blossom Trail
Orlando, FL 32832-9421

D. Is delivery address different from item 1?   □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
   ☒ Certified Mail      □ Express Mail
   □ Registered          □ Return Receipt for Merchandise
   □ Insured Mail        □ C.O.D.

4. Restricted Delivery? (Extra Fee)   □ Yes

2. Article Number
(Transfer from service label)        7003 2260 0004 4472 5842

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

**O F F I C I A L   U S E**

| Postage | $ $15.70 | 0701 |
| Certified Fee | $2.30 | 19 |
| Return Receipt Fee (Endorsement Required) | $1.75 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.90 | |
| Total Postage & Fees | $ $17.35 | 03/04/2005 |

Sent To  John A. King

Street, Apt No.; 11310 South Orange Blossom Tr
or PO Box No.

City, State, ZIP+4   Orlando, FL 32832-9421

PS Form 3800, June 2002     See Reverse for Instructions

7003 2260 0004 4472 5842

■ ...mplete items 1, 2, and 3. Also complete
...em 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

...gnature

X _Judy Melcher_  ☐ Agent
☐ Addressee

B. Received by ( _Printed Name_ )  _Judy L Melcher_  C. Date of Delivery

1. Article Addressed to:

John A. King
11310 South Orange Blossom Trail
Orlando, FL 32832-9421

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? ( _Extra Fee_ )  ☐ Yes

2. Article Number
( _Transfer from service label_ )

7003 2260 0004 4472 5835

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
( _Domestic Mail Only; No Insurance Coverage Provided_ )

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ $0.45 |
| Certified Fee | $2.30 |
| Return Receipt Fee (Endorsement Required) | $1.75 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $4.50 |

0701
19

Postmark
Here

03/04/2005

Sent To
John A. King
Street, Apt. No.;
or PO Box No. 11310 So. Orange Blossom Tr
City, State, ZIP+4
Orlando, FL 32832-9421

PS Form 3800, June 2002    See Reverse for Instructions

7003 2260 0004 4472 5835

Jun-28-04 12:10P                                                                 P.01

UNITED STATES POSTAL SERVICE

## Application for Delivery of Mail Through Agent

3 MONTHS    BOX# 232

See Privacy Act Statement on Reverse

1. Date 8/31/02

In consideration of delivery of my or our (firm) mail to the agent named below, the addressee and agent agree: ... must not file a change of address order with the Postal Service upon termination of the agency relationship ... affirm mail to another address is the responsibility of the agent; (3) all mail delivered to the agency under this authorization ... be prepaid with new postage when redeposited in the mails; (4) upon request the agent must provide to the postal service all address ... to which the agency transfers mail; and (5) when any information required on this form changes or becomes ... must file a revised application with the Commercial Mail Receiving Agency (CMRA).

NOTE: The applicant must execute this form in duplicate in the presence of the agent, his or her authorized employee, or ... public. The agent provides the original completed/signed Form 1583 to the Postal Service and retains a duplicate completed/signed copy at the CMRA business location. The CMRA copy of Form 1583 must at all times be available for examination by the postmaster (or designee) and the Postal Inspection Service. The addressee and the agent agree to comply with all applicable postal rules and regulations relative to delivery of mail through an agent. Failure to comply will subject the agency to withhold ... of mail to ... until corrective action is taken.

This application may be subject to verification procedures by the Postal Service to confirm that the applicant ... business at the home or business address listed in boxes 9 or 11, and that the identification listed in box 9 is ...

| 2. Name in Which Applicant's Mail Will Be Received for Delivery to Agent. *(Complete a separate Form 1583 for EACH applicant. Spouses may complete and sign one Form 1583. Two items of valid identification apply to each spouse. Include information for other spouse in appropriate box.)* | 3. Address to Be Used for Delivery Including Z...  Your Name/ Business Name |
|---|---|

X LAURA TYNDALL

X DR. JOHN KING

PMB#
11310 South Orange Blossom Trail  # 232
Orlando, FL 32837 —

4. Applicant Authorizes Delivery to and in Care of *(Name, address, and ZIP Code of agent)*
Mail Boxes Etc. #1619
11310 South Orange Blossom Trail
Orlando, FL 32837

5. Will This Delivery Address be Used for Soliciting or Doing Business With the Public? *(Check one)*
☐ Yes   ☒ No

6. Authorization to include Restricted Delivery Mail for the undersigned:
X [signature]

7. Name of Applicant
X LAURA TYNDALL + DR. JOHN KING

8. Home Address (Number, street, apt/suite no., city, state, ZIP)
X PO BOX 308
Groves, TX 77619

9. Telephone Number ( 423 504-3284

3. Two Types of Identification are Required. One Must Contain a Photograph of the Addressee; in All Cases Must Write in Identifying Information. Subject to Verification.

a Tex. Lic # 9461541

b.

10. Name of Firm or Corporation

Acceptable identification includes: driver's license; armed forces, government, or recognized corporate identification card; passport; alien registration card or other credential showing the applicant's signature and a serial number or similar information that is traceable to the bearer. A photocopy of your identification may be retained by agent for verification.

11. Business Address *(Number, street, city, state and ZIP Code)*

Telephone Number (   )

12. Kind of Business

13. If Applicant is a Firm, Name Each Member Whose Mail is to Be Delivered. All name ... identification. A guardian must list the names and ages of minors receiving mail at th ...

14. If a CORPORATION, Give Name and Addresses of its Officers

15. If Business Name of The Address *(Corporation ...)* Registered, Give Name of County and State and F ...

Warning: The furnishing of false or misleading information on this form or omission of material information may result in criminal sanctions, including fines and ... *(18 U.S.C. 1001)*

16. Signature of Agent/Notary Public
[signature]

PS Form 1583, March 1998

17. Signature of Applicant *(If firm or corporation, officer, show title.)*
X [signature]

This form on reverse at www.usps...

MAIL BOXES ETC

MAKING BUSINESS EASIER WORLDWIDE

## MAILBOX SERVICE AGREEMENT

CUSTOMER NAME: Laura Tisdall

COMPANY:

ADDRESS:

HOME PHONE:                    WORK PHONE:              FAX:

E-MAIL ADDRESS:                              MAIL BOXES ETC CENTER #

MAIL BOX NUMBER:                             SIZE OF MAILBOX

1) This Mailbox Service Agreement ("Agreement") is made and entered into by the customer identified above ("Customer") for the use of and services related to a mailbox (the "Mailbox") at the Mail Boxes Etc Center identified above (the "Center") under the terms set forth herein.

2) Customer agrees that Customer will not use the Center premises or any Center services for any unlawful, illegitimate, or fraudulent purpose or for any purpose prohibited by U.S. postal regulations. Customer further agrees that any use of the Mailbox shall be in conformity with all applicable federal, state and local laws. Each individual or entity must complete a separate U.S. Postal Service Form 1583 ("Form 1583") to be authorized to receive mail or packages at the Mailbox. However, spouses may complete one Form 1583, as long as both spouses include their separate information on the Form

3) This Agreement and Form 1583 shall remain confidential, except that this Agreement and Form 1583 may be disclosed upon request of any law enforcement or other governmental agency, or when legally mandated. Additionally, Customer acknowledges that pursuant to postal regulations the information required to complete Form 1583 may be made available by the U.S. Postal Service to the public if "yes" in block five (5) on Form 1583 is checked. Upon request Customer agrees to complete all necessary documents, including Form 1583 and any required acknowledgement form relating to services or products. Customer further agrees to sign an updated version of this Agreement and Form 1583 upon request.

4) Possession of the Mailbox key shall be considered valid evidence that the possessor is duly authorized to remove the contents from the Mailbox. In the event of death or incapacity of Customer, the Center will require the appropriate documents from the Probate Court, the executor of the estate, the trustee or other similar person or entity before releasing mail or packages to a requesting party.

5) Customer agrees to pay an initial set-up fee of _____ and a refundable security key deposit of _____ as well as applicable monthly service fees. The security/key deposit is refundable upon expiration, cancellation or termination of this Agreement provided that Customer returns the key, key card and/or other similar device, and pays all sums owed to the Center. Mailbox service fees are all due and payable in advance are non-refundable for cancellation of any service. Customer agrees to pay a late fee of _____ if any payment is not received within five (5) days of when due. In the event the Mailbox lock is changed upon the request or fault of Customer. Customer agrees to pay a fee of _____. Mailbox service fees and other related fees stated herein are subject to change. In the event that Customer receives an unreasonable volume of mail or packages at the Mailbox according to the Center's reasonable judgement, the Center may require Customer to upgrade to a larger size mailbox and pay any additional charge. The Center reserves the right to increase the Mailbox service fees in the event that Customer adds additional individuals or entities to the names of those individuals or entities authorized to receive mail and packages at the Mailbox pursuant to Form 1583.

6) Upon expiration, cancellation or termination of this Agreement, the Center will:

    a. Re-mail (i.e., forward) Customer's mail for six (6) months, provided Customer pays the postage, packaging material, and forwarding fees in advance. Additionally, Customer must pay a monthly storage fee

Small B.

Revised April 1999

1 of 2

of ____5____ for month t, and ____10____ for months 2 through 6 in advance for the the period that mail is to be forwarded. It is Customer's responsibility to make arrangements with the Center identify any mail forwarding needs prior to the expiration, cancellation or termination of this Agreement

b. Discard or destroy any "Unsolicited Mail" (e.g., bulk mail; mail addressed as "occupant" "current resident" or similar designation; or coupons, advertising or other promotional material) delivered to or remaining at the Center.

c. Retain Customer's mail, other than Unsolicited Mail, at the Center for a period of thirty (30) days from the date of delivery or six (6) months after the expiration, cancellation or termination of this Agreement, whichever occurs first, if Customer leaves no forwarding fees or forwarding address. After such time, or mail or package may be discarded or destroyed. In order to pick up any mail or package during the thirty (30) month period Customer must pay a storage fee of ____10____ per month for the time period in which the Center holds the mail or package(s), plus a service fee of ____5____ for each time Customer visits the Center to pick up such items.

d. Refuse any package addressed to Customer delivered by any party other than the U.S. Postal Service, such as a commercial courier service.

7) Six (6) months after the expiration, cancellation or termination of this Agreement, the Center m:.

a. Refuse any mail or package addressed to Customer and delivered to the Center.

b. Discard or destroy any of Customer's mail or package delivered to or remaining at the Center, at such time.

8) The term of this Agreement shall be the initial period paid for by Customer and any renewal terms paid for by Customer from time to time. Renewal of this Agreement for additional terms shall be at the Center's sole discretion.

9) Customer agrees that the Center may terminate or cancel this Agreement for good cause at any time by providing Customer thirty (30) days written notice. Good cause shall include but is not limited to: 1) Customer abandons the MailBox; 2) Customer uses the Mailbox for unlawful, illegitimate or fraudulent purposes; 3) Customer fails to pay monies owed the Center when due; 4) Customer receives an unreasonable volume of mail or packages; 5) Customer engages in offensive, abusive or disruptive behavior toward other customers of the Center or the Center's employees; and 6) Customer violates any provision of this Agreement. Customer acknowledges that, for the purpose of determining good cause for termination of this Agreement as provided herein, the actions of any person authorized by Customer to use the Mailbox will be attributed to Customer.

10) Any written notice to Customer required or permitted under this Agreement shall be deemed delivered twenty-four (24) hours after placement of such notice in Customer's Mailbox or at the time personally delivered to Customer. In the event of a termination notice upon abandonment of the Mailbox, notice shall be deemed delivered (a) on the next day after placing in the hands of a commercial courier service or the United States Postal Service for next day delivery, or (b) five (5) days after placement in the United States Mail by Certified Mail, Return Receipt Requested, postage prepaid, and addressed to Customer at Customer's address as set forth in Form 1583, or on the date of actual receipt whichever is earlier.

11) As Customer's authorized agent for receipt of mail, the Center will accept all mail, including registered, insured and certified items. Unless prior arrangements have been made, the Center shall only be obligated to accept mail or packages delivered by commercial courier services which require a signature from the Center as a condition of delivery. Customer must accept and sign for all mail encompassages upon the request of the Center. Packages not picked up within ____5____ days of notification will be subject to a storage fee of ____.50____ per day per package, which must be paid before Customer receives the package. In the event Customer refuses to accept any mail or package, the Center may return the mail or package to the sender and Customer will be responsible for any postage or other fees associated with such return. C.O.D. items will be accepted ONLY if prior arrangements have been made and payment in advance is provided to the Center.

12) Customer agrees to protect, indemnify, defend and hold harmless the Center, Mail Boxes Etc. U.S.A. Inc., and their respective affiliates, subsidiaries, parent corporations, franchisees, officers, directors, agents and employees from and

Customer's Initials _____

Rev. 4 April 1997

2 of 3

against any and all losses, damages, expenses, claims, demands, liabilities, judgments, settlement amounts, costs and causes of action of every type and character arising out of or in connection with the use or possession of the Mailbox, including, without limitation, any demands, claims and causes of action for personal injury or property damage, arising from such use or possession, from failure of the U.S. Postal Service or any commercial courier service to deliver on time or otherwise deliver any items (mail, packages, etc.), from damage to or loss of any package or mail, or to the Mailbox contents by any cause whatsoever, and from any violation by Customer of applicable federal, state or local laws.

13) Customer acknowledges and agrees that the Center is an independently owned and operated franchise of Mail Boxes Etc. USA, Inc. ("Franchisor") and that Franchisor is not responsible for any acts or omissions of its franchisee.

14) CUSTOMER HEREIN AGREES THAT THE TOTAL AMOUNT OF LIABILITY OF THE CENTER AND FRANCHISOR, IF ANY, FOR ANY AND ALL CLAIMS ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL NOT EXCEED $100.00 REGARDLESS OF THE NATURE OF THE CLAIM. (INITIAL _____)

15) Customer must use the exact mailing address for the Mailbox without modification as set forth in Section three (3) of Form 1583. Mail received by Customer must have a delivery address that contains at least the following elements, in this order:

(1) Intended addressee's name or other identification. Examples: Joe Doe or ABC Co.

(2) "PMB" and number. Example: PMB 234.

(3) Street number and name or post office box number or rural route designation and number. Examples: 10 Main St. or P.O. BOX 34 or RR 1 BOX

(4) City, state, and ZIP Code (5-digit or ZIP+4). Example: Herndon VA 22071-2716

The Postal Service will return mail without a proper address to the sender endorsed "Undeliverable as Addressed."

16) Delivery by commercial courier services must be made to the Center street address only (and not a "P.O. Box" "P.O. Box" may be used only if it is part of Customer's "Caller Service" (arrangement for delivery of mail through Center using a U.S. Postal Service address) address format. In such case, the "PMB" designation must also be used. Upon signing this Agreement, Customer shall provide two forms of valid identification, one of which shall include a photograph. The Agreement may not be amended or modified, except in a writing signed by both parties.

A CUSTOMER SIGNATURE: _____ DATE: 5-30-02

AUTHORIZED CENTER REPRESENTATIVE

SIGNATURE: _____ DATE: 8/30/02

HOW DID CUSTOMER HEAR ABOUT US? _____

3 of 3



PmD.232







# CURRY & TOLLIVER, PLLC
## LAWYERS

JACK D. TOLLIVER, M.D., J.D. †
ARDEN J. CURRY
ARDEN J. CURRY, II †
DAVID K. SCHWIRIAN †
SUSAN CURRY BRASSELLE †‡

100 KANAWHA BOULEVARD, WEST
CHARLESTON, WEST VIRGINIA 25302

P.O. BOX 11866
CHARLESTON, WV  25339
TEL: (304) 343-7200
FAX: (304) 353-0350

WRITER'S DIRECT
E-MAIL ADDRESS: JOHN@CURRYTOLLIVER.COM
FAX NUMBER: (304) 353-0344

June 23, 2005

Donald A. Wright, Clerk
Putnam County Circuit Court
Putnam County Courthouse
3389 Winfield Road
Winfield, WV 25213

> **FILED**
>
> **JUN 2 3 2005**
>
> PUTNAM COUNTY
> CIRCUIT COURT

Re:   **CA 05-C-70**
       **Sidney V. Barker**

Dear Mr. Wright:

Pursuant to West Virginia Rule of Civil Procedure 4(d)(1)(E), enclosed you will find (1) two copies of a Notice and Acknowledgment addressed to defendant John A. King, DO, (2) a copy of the Complaint and Summons filed in the above-styled civil action, and (3) our firm's check payable to you in the amount of $10.00.   The check is payment for mailing the Notice/Acknowledgment and Complaint and Summons by **certified mail, return receipt requested, restricted delivery to addressee.**    I am also enclosing typed certified mail documents for your convenience.

Please accept my thanks for your kind assistance in this matter.

Yours truly,

Arden J. Curry, II

AJC,II/mcs
Enclosures

† Also Admitted in Kentucky
‡ Also Admitted in Ohio

S:\CURRY\BARKER.1\2005CORR\LW25.doc

$2^3$

2005 JUN 24   AM 11: 24



**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

O F F I C I A L   U S E

| | |
|---|---|
| Postage | $ |
| Certified Fee | 2.30 |
| Return Receipt Fee (Endorsement Required) | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | 3.50 |
| Total Postage | |

Postmark
Here

Sent To: John A. King, DO
Street, Apt. No. or PO Box No.: 11310 S. Orange Blossom Trail Suite 232
City, State, Zip: Orlando, FL 32832-9421

7004 2890 0004 3996 1327

PS Form 3800                See Reverse for Instructions

24

## IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

SIDNEY V. BARKER,

           Plaintiff,

Vs.                              **CIVIL ACTION NO. 05-C-70**

JOHN A. KING, DO, ET AL

           Defendants.

### ORDER OF PUBLICATION

The object of each of the above-styled civil actions is to obtain judgment against the named defendants for injuries suffered by each plaintiff as a result of medical malpractice and other common law torts.  It appearing by affidavit filed in each action that said **JOHN A. KING, DO** is a non-resident of the State of West Virginia, it is

ORDERED that **JOHN A. KING, DO** do appear and serve upon ARDEN J. CURRY II, attorney for each plaintiff named above, whose address is Post Office Box 2786, Charleston, West Virginia 25530-2786, an answer or other defense to each complaint filed in the above actions on or before August 15, 2005, otherwise judgment by default will be taken against him at any time thereafter.

A copy of the complaints can be obtained from the undersigned Clerk at his office located at 3389 Winfield Road, Winfield, West Virginia 25213, in said County and State.

ENTERED by the Clerk of said Court this _____ day of June 2005.


Teste: _____
                        *Clerk of said Court*

By: _____
                        *His Deputy*

IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

SIDNEY V. BARKER,

        **Plaintiff,**

v.                                          **CIVIL ACTION NO. 05-C-70**

JOHN A. KING, D.O.; DAVID McNAIR;
TEAYS VALLEY HEALTH SERVICES, INC.,
d/b/a PUTNAM GENERAL HOSPITAL;
HCA, INC.; HEALTHTRUST, INC. -
THE HOSPITAL COMPANY, a Foreign
Corporation; HOSPITAL CORP, L.L.C,
WRIGHT MEDICAL TECHNOLOGY, INC.,
ROBERT EDWARDS, aka BOB EDWARDS,
and EBI L.P.,

        **Defendants.**

## ANSWER AND CROSS-CLAIM OF DEFENDANT, TEAYS VALLEY HEALTH SERVICES, INC. d/b/a PUTNAM GENERAL HOSPITAL TO THE COMPLAINT

        COMES NOW Defendant, Teays Valley Health Services, Inc. ("Teays Valley") d/b/a Putnam General Hospital ("PGH"), by counsel, and submits the following as its Answer to Plaintiff's Complaint:

### FIRST DEFENSE

        The Complaint fails to state a claim upon which relief can be granted. Therefore, the claims against this Defendant should be dismissed.

### SECOND DEFENSE

        1. Answering Paragraph 1 of the Complaint, Defendant admits that John A. King, D.O., David McNair and certain PGH employees provided medical care to Plaintiff Sidney Barker as reflected in his PGH medical records. Defendant is without knowledge or

information sufficient to admit or deny that Plaintiff Sidney Barker was a resident and citizen of the State of West Virginia at all times relevant to the allegations contained in the Complaint. Defendant denies the remaining allegations contained therein and demands strict proof thereof.

2. Answering Paragraph 2 of the Complaint, Defendant admits that John A. King, D.O. was an osteopathic physician who practiced at PGH from October 30, 2002 until his privileges were suspended on June 5, 2003. Defendant denies the remaining allegations contained therein and demands strict proof thereof.

3. Answering Paragraph 3 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

4. Answering Paragraph 4 of the Complaint, Defendant admits that at all times relevant to the allegations set forth in the Complaint Teays Valley owned and operated PGH in Putnam County, West Virginia. Defendant denies the remaining allegations contained therein and demands strict proof thereof.

5. Answering Paragraph 5 of the Complaint, Defendant admits that at all times relevant to the allegations set forth in the Complaint Teays Valley was an indirect subsidiary of HCA Inc. ("HCA"). Defendant denies the remaining allegations contained therein and demands strict proof thereof.

6. Answering Paragraph 6 of the Complaint, Defendant admits that Healthtrust, Inc. – The Hospital Company ("Healthtrust") is a Delaware corporation. Defendant further admits that HCA owns all of the outstanding common stock of Healthtrust, which in turn is the sole member of Hospital Corp, LLC ("Hospital Corp."), which in turn owns all of the outstanding common stock of Teays Valley. Defendant further admits that Healthtrust does

not operate businesses or have employees.  Defendant denies the remaining allegations contained therein and demands strict proof thereof.

7. Answering Paragraph 7 of the Complaint, Defendant admits that Hospital Corp. is a limited liability company that owns all of the outstanding common stock of Teays Valley; and that Hospital Corp. does not operate businesses or have employees.  Defendant denies the remaining allegations contained therein and demands strict proof thereof.

8. Answering Paragraph 8 of the Complaint, Defendant admits that Dr. King performed the procedures reflected in Sidney Barker's PGH medical records.  Defendant denies the remaining allegations contained therein and demands strict proof thereof.

9. Answering Paragraph 9 of the Complaint, Defendant admits that Mr. McNair and other health care providers assisted Dr. King while Dr. King performed the operative procedures set forth in Paragraph 8 of the Complaint.  Defendant also admits that the operative report dictated by Dr. King lists Mr. McNair as a physician assistant or orthopedic physician assistant although he was not employed in that capacity by this Defendant. Defendant denies the remaining allegations contained therein and demands strict proof thereof.

10. Answering Paragraph 10 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 9 of the Complaint as if set forth fully herein.

11. Answering Paragraph 11 of the Complaint, Defendant admits the allegations contained therein.

12. Answering Paragraph 12 of the Complaint, Defendant admits the allegations contained therein.

OFFUTT,
FISHER & NORD
·ORNEYS & COUNSELLORS

13. Answering Paragraph 13 (a-p) of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

14. Answering Paragraph 14 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 13 of the Complaint as if set forth fully herein.

15. Answering Paragraph 15 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

16. Answering Paragraph 16 of the Complaint, as the allegations contained therein do not pertain to this Defendant, no response is required. To the extent that a response is required, Defendant denies the allegations contained therein and demands strict proof thereof.

17. Answering Paragraph 17 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 16 of the Complaint as if set forth fully herein.

18. Answering Paragraph 18 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

19. Answering Paragraph 19 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

20. Answering Paragraph 20 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

21.  Answering Paragraph 21 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

22.  Answering Paragraph 22 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

23.  Answering Paragraph 23 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

24.  Answering Paragraph 24 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

25.  Answering Paragraph 25 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

26.  Answering Paragraph 26 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

27.  Answering Paragraph 27 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

OFFUTT,
FISHER & NORD
ORNEYS & COUNSELLORS

28.  Answering Paragraph 28 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

29.  Answering Paragraph 29 (a-b) of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

30.  Answering Paragraph 30 of the Complaint, Defendant denies that Mr. McNair performed a surgical procedure on the Plaintiff.  As the remainder of the allegations contained in Paragraph 30 of the Complaint do not pertain to this Defendant, no response is required.  To the extent a response is required, Defendant denies the same and demands strict proof thereof.

31.  Answering Paragraph 31 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

32.  Answering Paragraph 32 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 31 of the Complaint as if set forth fully herein.

33.  Answering Paragraph 33 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

34.  Answering Paragraph 34 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

OFFUTT,
FISHER & NORD
ORNEYS & COUNSELLORS

6

35.  Answering Paragraph 35 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

36.  Answering Paragraph 36 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

37.  Answering Paragraph 37 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

38.  Answering Paragraph 38 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

39.  Answering Paragraph 39 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

40.  Answering Paragraph 40 of the Complaint, Defendant  is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

41.  Answering Paragraph 41 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

42.  Answering Paragraph 42 of the Complaint, Defendant denies that Mr. McNair performed  surgery  on  the  Plaintiff.     As  the  remainder  of  the  allegations  contained  in

Paragraph 42 of the Complaint do not pertain to this Defendant, no response is required.  To the extent a response is required, this Defendant denies the same and demands strict proof thereof.

43.  Answering Paragraph 43 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

44.  Answering Paragraph 44 of the Complaint, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same and demands strict proof thereof.

45.  Answering Paragraph 45 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 44 of the Complaint as if set forth fully herein.

46.  Answering Paragraph 46 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

47.  Answering Paragraph 47 of the Complaint, as the allegations contained therein do not pertain to this Defendant, no response is required.  To the extent that a response is required, Defendant denies the same and demands strict proof thereof.

48.  Answering Paragraph 48 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 47 of the Complaint as if set forth fully herein.

49.  Answering Paragraph 49 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

50.  Answering Paragraph 50 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 49 of the Complaint as if set forth fully herein.

OFFUTT,
FISHER & NORD
TORNEYS & COUNSELLORS

51.  Answering Paragraph 51 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

52.  Answering Paragraph 52 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

53.  Answering Paragraph 53 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

54.  Answering Paragraph 54 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 53 of the Complaint as if set forth fully herein.

55.  Answering Paragraph 55 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

56.  Answering Paragraph 56 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 55 of the Complaint as if set forth fully herein.

57.  Answering Paragraph 57 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

58.  Answering Paragraph 58 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

59.  Answering Paragraph 59 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

60.  Answering Paragraph 60 of the Complaint, Defendant denies that any entity or individual sold or supplied products and medical devices to Mr. McNair.  Defendant also denies that Mr. McNair performed a surgical procedure on the Plaintiff.  As the remaining allegations contained in Paragraph 60 of the Complaint do not pertain to this Defendant, no response is required.   To the extent that a response is required, Defendant denies the

OFFUTT,
FISHER & NORD
TORNEYS & COUNSELLORS

9

remaining allegations and demands strict proof thereof.

61. Answering Paragraph 61 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 60 of the Complaint as if set forth fully herein.

62. Answering Paragraph 62 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

63. Answering Paragraph 63 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 62 of the Complaint as if set forth fully herein.

64. Answering Paragraph 64 of the Complaint, Defendant admits that Teays Valley is an indirect, wholly owned subsidiary of HCA, and that its original Articles of Incorporation (which were filed prior to Teays Valley becoming an indirect, wholly owned subsidiary of HCA) indicated that its principal place of business was One Park Plaza, Nashville, Tennessee 37203; and further that this is currently the location of the corporate headquarters of HCA. Defendant further admits that the Bylaws of the Board of Trustees of the Hospital in effect in 2003, used the words "local advisory board" in one portion of the Bylaws to describe the Board of Trustees of the Hospital. Defendant denies the remaining allegations contained therein and demands strict proof thereof.

65. Answering Paragraph 65 of the Complaint, Defendant admits that HCA owns all of the outstanding common stock of Healthtrust, which in turn is the sole member of Hospital Corp., which in turn owns all of the outstanding common stock of Teays Valley. The Defendant further admits that Healthtrust, Hospital Corp. and HCA do not operate businesses or have employees. Defendant further admits that Teays Valley has employees. Defendant denies the remaining allegations contained therein and demands strict proof thereof.

66.  Answering Paragraph 66 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

67.  Answering Paragraph 67 of the Complaint, Defendant admits that an unaudited financial statement for Teays Valley reflecting a net worth of $16,186,146 as of September 30, 2004, and a pretax loss of $769,228 for the 9 months ending September 30, 2004, was attached to an affidavit submitted in support of a motion to dismiss and supporting memorandum filed by HCA, Healthtrust and Hospital Corp. in litigation styled Civil Action No. 04-C-649; *B.R. v. Teays Valley Health Services, Inc. d/b/a Putnam General Hospital and Hospital Corporation of America*, in the Circuit Court of Kanawha County, West Virginia. Defendant denies the remaining allegations contained therein and demands strict proof thereof.

68.  Answering Paragraph 68 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

69.  Answering Paragraph 69 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 68 of the Complaint as if set forth fully herein.

70.  Answering Paragraph 70 (a-f) of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

71.  Answering Paragraph 71 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

72.  Answering Paragraph 72 of the Complaint, Defendant admits that one of its indirectly wholly owned subsidiaries, Healthcare Indemnity, Inc., provides insurance to HCA's operating subsidiaries.  Defendant denies the remaining allegations contained therein and demands strict proof thereof.

73.   Answering Paragraph 73 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

74.   Answering Paragraph 74 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

75.   Answering Paragraph 75 of the Complaint, Defendant re-asserts its answers and defenses to Paragraphs 1 through 74 of the Complaint as if set forth fully herein.

76.   Answering Paragraph 76 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

77.   Answering Paragraph 77 of the Complaint, Defendant denies the allegations contained therein and demands strict proof thereof.

78.   To the extent that any allegation in the Complaint is not specifically admitted herein, it is denied.

### THIRD DEFENSE

Should the evidence so indicate, Defendant will assert that the injuries complained of by Plaintiff were the result of an underlying medical condition, medical process, or an act of God and were not the result of any negligent act or omission by this Defendant; therefore, the Complaint should be dismissed against it.

### FOURTH DEFENSE

Defendant asserts all the protections, limitations, and defenses contained in the Medical Professional Liability Act, contained in West Virginia Code § 55-7(b)-1 *et seq.*

### FIFTH DEFENSE

Should the evidence so indicate, the Defendant will assert that the negligence of the Plaintiff, Sidney Barker, equaled or exceeded the negligence, if any, of this Defendant.

Therefore, the Complaint is barred by the doctrine of comparative negligence.   In the alternative, any judgment thereon should be reduced by Plaintiff's percentage of contributory negligence.

### SIXTH DEFENSE

Should the evidence so indicate, the Defendant will assert that the Plaintiff, Sidney Barker, assumed the risk of his injuries.   Therefore, Plaintiff's claims are barred by the doctrine of assumption of risk or, alternatively, any award to him should be reduced by his comparative assumption of risk.

### SEVENTH DEFENSE

Should the evidence so indicate, the Defendant will assert that the Plaintiff's claims are barred by the applicable statute of limitations and/or the equitable doctrine of laches.

### EIGHTH DEFENSE

Should the evidence so indicate, the Defendant will assert that the Plaintiff's injuries were proximately caused by the acts or omissions of others, negligent or otherwise, of whom this Defendant exercises no control and for whose acts or omissions it is not responsible.

### NINTH DEFENSE

Defendant specifically denies the agency relations alleged in the Complaint and demands strict proof thereof.

### TENTH DEFENSE

Should the evidence so indicate, the Defendant will assert that the Plaintiff failed to mitigate his damages.

## ELEVENTH DEFENSE

Plaintiff cannot establish a claim for punitive damages against this Defendant. As such, Plaintiff's claim for punitive damages should be dismissed against this Defendant.

## TWELFTH DEFENSE

Plaintiff's claim for punitive damages violates the Due Process Clauses of the United States Constitution and the West Virginia Constitution and, therefore, should be dismissed.

## THIRTEENTH DEFENSE

Defendant neither caused nor contributed to Plaintiff's alleged injuries and damages.

## FOURTEENTH DEFENSE

Defendant breached no duties owed to the Plaintiff.

## FIFTEENTH DEFENSE

John A. King, D.O. was insured during the entire period that he had privileges at Putnam General Hospital and, therefore, Putnam General Hospital cannot be held vicariously liable for any of Dr. King's alleged wrongful acts or omissions.

## SIXTEENTH DEFENSE

Defendant hereby adopts and incorporates all defenses asserted by other defendants to this action.

## SEVENTEENTH DEFENSE

With the exception of the Negligent Credentialing, Privileging, Recruitment, Hiring, Supervision and Retention claim, Plaintiff failed to comply with the pre-filing requirements of West Virginia Code § 55-7B-6, and therefore, all other claims should be dismissed.

OFFUTT,
FISHER & NORD
ORNEYS & COUNSELLORS

14

### EIGHTEENTH DEFENSE

Plaintiff's negligent credentialing and privileging claim is barred by the Health Care Quality Improvement Act.

### NINETEENTH DEFENSE

Defendant reserves the right to amend, expand, alter, or enlarge its Answer to the Complaint at anytime it may be so advised, so as to rely upon defenses disclosed prior to or incident to trial.

### **CROSS-CLAIM AGAINST CO-DEFENDANTS**

COMES NOW Defendant/Cross-Claim Plaintiff, Teays Valley Health Services, Inc. d/b/a Putnam General Hospital, by counsel, pursuant to Rule 13(g) of the West Virginia Rules of Civil Procedure, and without waiving the defenses asserted in its Answer above, but in the alternative, states as follows for its Cross-Claim against Co-Defendants John A. King, D.O. ("Dr. King"), Wright Medical Technology, Inc. ("Wright Medical"), Robert Edwards, aka Bob Edwards ("Mr. Edwards"), and EBI L.P. ("EBI") (collectively "Co-Defendants"):

1.      In this litigation, the Plaintiff seeks to recover damages against the Defendants under various theories, including but not limited to, medical malpractice, civil conspiracy, intentional and negligent infliction of emotional distress, tort of outrage, fraud and deceit, and joint venture/joint enterprise.

2.      Co-Defendants Dr. King, Wright Medical, Mr. Edwards and EBI individually and/or collectively committed wrongful acts, negligent or otherwise, against the Plaintiff which caused or contributed to any injuries and damages sustained by the Plaintiff.

3.      Teays Valley committed no wrongful acts, negligent or otherwise, against the Plaintiff.

OFFUTT,
FISHER & NORD
·ORNEYS & COUNSELLORS

15

4.     If it is determined in this litigation that Teays Valley is liable for damages to the Plaintiff, which liability is expressly denied, then Teays Valley is entitled to be indemnified by each of the Co-Defendants for any such liability or, in the alternative, to recover a pro rata share of the amount of said judgment from each of the Co-Defendants by way of contribution.

**WHEREFORE,** Defendant Teays Valley Health Services, Inc. d/b/a Putnam General Hospital, demands that the Complaint filed herein against it be dismissed, with prejudice, and that it be awarded its costs incurred in the defense of this claim, including reasonable attorneys' fees.

Further, Defendant/Cross-Claim Plaintiff, Teays Valley Health Services, Inc. moves the Court for a judgment against John A. King, D.O., Wright Medical Technology, Inc., Robert Edwards, aka Bob Edwards, and/or EBI L.P., jointly and severally, in the amount of any judgment rendered for the Plaintiff against Teays Valley in this action for such costs and expenses incurred in the defense thereof, including reasonable attorneys' fees.

## DEFENDANT DEMANDS A TRIAL BY JURY

**TEAYS VALLEY HEALTH SERVICES, INC. d/b/a PUTNAM GENERAL HOSPITAL**

**BY COUNSEL,**

D.C. Offutt, Jr., Esquire (WV #2773)
Michael M. Fisher, Esquire (WV #4353)
*Offutt, Fisher & Nord*
812 Quarrier Street, Suite 600
Post Office Box 2833
Charleston, West Virginia 25330
Telephone:  (304) 343-2869
Facsimile:  (304) 343-3053

and

John T. Jessee, Esquire (WV #1885)
**LeClair Ryan, A Professional Corporation**
1800 Wachovia Tower
Drawer 1200
Roanoke, Virginia 24006
Telephone:  (540) 510-3018
Facsimile:  (540) 510-3050

## IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

SIDNEY V. BARKER,

                 Plaintiff,

v.                                               CIVIL ACTION NO. 05-C-70

JOHN A. KING, D.O.; DAVID McNAIR;
TEAYS VALLEY HEALTH SERVICES, INC.,
d/b/a PUTNAM GENERAL HOSPITAL;
HCA, INC.; HEALTHTRUST, INC. -
THE HOSPITAL COMPANY, a Foreign
Corporation; HOSPITAL CORP, L.L.C,
WRIGHT MEDICAL TECHNOLOGY, INC.,
ROBERT EDWARDS, aka BOB EDWARDS,
and EBI L.P.,

                 Defendants.

### CERTIFICATE OF SERVICE

     I, Michael M. Fisher, Esquire, counsel for Teays Valley Health Services, Inc. d/b/a Putnam General Hospital, do hereby certify that a true and exact copy of the foregoing **"Answer and Cross-Claim of Defendant, Teays Valley Health Services, Inc. d/b/a Putnam General Hospital to the Complaint"** has been served upon counsel of record, by depositing same into the United States Mail, postage pre-paid, this ___ day of June, 2005, addressed to the following:

                    Arden J. Curry, II Esquire
                    Curry & Tolliver, PLLC
                    P.O. Box 11866
                    Charleston, West Virginia 25338
                    Counsel for Plaintiff

                    John A. King, D.O.
                    11310 S. Orange Blossom Trail, Suite 232
                    Orlando, Florida 32837-9421
                    Pro Se

Thomas C. Hurney, Jr., Esquire
Jackson Kelly PLLC
1600 Laidley Tower
Post Office Box 553
Charleston, WV 25322
Counsel for David McNair

Richard D. Jones, Esquire
Flaherty Sensabaugh & Bonasso PLLC
P.O. Box 3843
Charleston, West Virginia 25338-3843
Counsel for HCA, Inc., Healthtrust, Inc.-
The Hospital Company, and Hospital Corp. L.L.C.

Stephen B. Farmer, Esquire
Farmer Cline & Campbell
P.O. Box 3842
Charleston, West Virginia 25338
Counsel for Wright Medical and Robert Edwards aka Bob
Edwards

Matthew A. Taylor, Esquire
Duane Morris
One Liberty Place
Philadelphia, Pennsylvania 19103-7396
Counsel for Wright Medical and Robert Edwards aka Bob
Edwards

Neva G. Lusk, Esquire
Spilman Thomas & Battle
P.O. Box 273
Charleston, West Virginia 25321-0273
Counsel for EBI L.P.

Michael M. Fisher, Esquire (WV Bar No. 4353)

30

## IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

**SIDNEY V. BARKER,**

                **Plaintiff,**                      **Civil Action No. 05-C-70**

        **vs.**

**JOHN A. KING, D.O.; DAVID MCNAIR;**
**TEAYS VALLEY HEALTH SERVICES, INC.,**
**d/b/a PUTNAM GENERAL HOSPITAL; HCA, INC.;**
**HEALTHTRUST, INC. – THE HOSPITAL COMPANY;**
**HOSPITAL CORP., L.L.C.; WRIGHT MEDICAL**
**TECHNOLOGY, INC.; ROBERT EDWARDS,**
**a.k.a. BOB EDWARDS; and EBI L.P.**

                **Defendants.**

### ANSWER OF DEFENDANT ROBERT EDWARDS
### TO THE CROSS-CLAIM OF DEFENDANT TEAYS VALLEY
### HEALTH SERVICES CENTER, INC., d/b/a PUTNAM GENERAL HOSPITAL

COMES NOW Defendant Robert Edwards ("Edwards"), by his attorneys, and hereby submits his Answer to the Cross-Claim of Defendant Teays Valley Health Services Center, Inc., d/b/a Putnam General Hospital ("Teays Valley"), as follows:

1.      Admitted.

2.      Denied.  It is specifically denied that Edwards committed any wrongful acts, negligent or otherwise, and it is specifically denied that Edwards caused or contributed to any injuries or damages allegedly sustained by the Plaintiff.

3.      Denied.  Edwards is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph, and they are therefore denied.

4.      Denied.  It is denied that Edwards would be liable for contribution and/or indemnity in the event that it is determined in this litigation that Teays Valley is liable for damages to Plaintiff.

WHEREFORE, Defendant Robert Edwards denies any and all liability to any other party for any amount and denies that Teays Valley is entitled to any relief whatsoever.  Robert Edwards respectfully requests that this Court dismiss with prejudice the Cross-Claims of Teays Valley and award him such further relief to which he may be entitled and as the Court may deem proper.

ROBERT EDWARDS,

Defendant,

By Counsel:

Stephen B. Farmer (W. Va. Bar No. 1165)
G. Kenneth Robertson (W. Va. Bar No. 5986)
Stacy A. Jacques (W. Va. Bar No. 9677)
FARMER, CLINE & CAMPBELL, PLLC
P.O. Box 3842
Charleston, WV 25338
(304) 346-5990

OF COUNSEL:
Matthew A. Taylor (Pa. Bar No. 62098)
James L. Beausoleil, Jr. (Pa. Bar No. 74308)
Dana J. Ash (Pa. Bar No. 80046)
DUANE MORRIS LLP
One Liberty Place, 1650 Market Street
Philadelphia, Pa. 19103
(215) 979-1000

## IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

SIDNEY V. BARKER,

     **Plaintiff,**        Civil Action No. 05-C-70

  **vs.**

JOHN A. KING, D.O.; DAVID MCNAIR;
TEAYS VALLEY HEALTH SERVICES, INC.,
d/b/a PUTNAM GENERAL HOSPITAL; HCA, INC.;
HEALTHTRUST, INC. – THE HOSPITAL COMPANY;
HOSPITAL CORP., L.L.C.; WRIGHT MEDICAL
TECHNOLOGY, INC.; ROBERT EDWARDS,
a.k.a. BOB EDWARDS; and EBI, L.P.

     **Defendants.**

### CERTIFICATE OF SERVICE

   I, Stacy A. Jacques, counsel for Robert Edwards do hereby certify that a true and exact

copy of the following "Answer of Defendant Robert Edwards to the Cross-Claim of Defendant

Teays Valley Health Services Center, Inc., d/b/a Putnam General Hospital" has been served upon

counsel of record, by depositing same into the United States Mail, postage paid, this 4th day of

August 2005, addressed to the following:

      Arden J. Curry, II, Esquire
      Curry & Tolliver, PLLC
      P.O. Box 11866
      Charleston, West Virginia 25338
       *Counsel for Plaintiff*

      John A. King, D.O.
      11210 S. Orange Blossom Trail-Suite 232
      Orlando, Florida 32837-9421
       *Pro se*

      D.C. Offut, Jr., Esquire
      Michael M. Fisher, Esquire
      OFFUTT, FISHER & NORD
      P.O. Box 2833
      Charleston, West Virginia 25530

*Counsel for Teays Valley Health Services,*
*Inc.,d/b/a Putnam General Hospital*

Richard D. Jones, Esquire
FLAHERTY, SENSABAUGH & BONASSO PLLC
P.O. Box 3843
Charleston, West Virginia 25338
 *Counsel for HCA, Inc., Healthtrust, Inc.—The*
 *Hospital Company, and Hospital Corp. L.L.C.*

Thomas C. Hurney, Jr., Esquire
Jackson Kelly PLLC
1600 Laidley Tower
P.O. Box 553
Charleston, West Virginia25322
 *Counsel for David McNair*

Neva G. Lusk, Esquire
Spilman Thomas & Battle
P.O. Box 273
Charleston, West Virginia 25321
 *Counsel for EBI, L.P.*

Stacy A. Jacques
(W. Va. Bar No. 5986)

4

30

IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

SIDNEY V. BARKER,

                    Plaintiff,                    Civil Action No. 05-C-70

          vs.

JOHN A. KING, D.O.; DAVID MCNAIR;
TEAYS VALLEY HEALTH SERVICES, INC.,
d/b/a PUTNAM GENERAL HOSPITAL; HCA, INC.;
HEALTHTRUST, INC. – THE HOSPITAL COMPANY;
HOSPITAL CORP., L.L.C.; WRIGHT MEDICAL
TECHNOLOGY, INC.; ROBERT EDWARDS,
a.k.a. BOB EDWARDS; and EBI L.P.

                    Defendants.

### ANSWER OF DEFENDANT WRIGHT MEDICAL TECHNOLOGY, INC., TO THE CROSS-CLAIM OF DEFENDANT TEAYS VALLEY HEALTH SERVICES CENTER, INC., d/b/a PUTNAM GENERAL HOSPITAL

COMES NOW Defendant Wright Medical Technology, Inc. ("Wright Medical"), by its

attorneys, and hereby submits its Answer to the Cross-Claim of Defendant Teays Valley Health

Services Center, Inc., d/b/a Putnam General Hospital ("Teays Valley"), as follows:

1.     Admitted.

2.     Denied.  It is specifically denied that Wright Medical committed any wrongful

acts, negligent or otherwise, and it is specifically denied that Wright Medical caused or

contributed to any injuries or damages allegedly sustained by the Plaintiff.

3.     Denied.  Wright Medical is without knowledge or information sufficient to form a

belief as to the truth of the averments in this paragraph, and they are therefore denied.

4.     Denied.  It is denied that Wright Medical would be liable for contribution and/or

indemnity in the event that it is determined in this litigation that Teays Valley is liable for

damages to Plaintiff.

WHEREFORE, Defendant Wright Medical Technology, Inc., denies any and all liability to any other party for any amount and denies that Teays Valley is entitled to any relief whatsoever.  Wright Medical respectfully requests that this Court dismiss with prejudice the Cross-Claims of Teays Valley and award Wright Medical such further relief to which it may be entitled and as the Court may deem proper.

WRIGHT MEDICAL TECHNOLOGY, INC.,

Defendant,

By Counsel:

Stephen B. Farmer (W. Va. Bar No. 1165)
G. Kenneth Robertson (W. Va. Bar No.
5986)
Stacy A. Jacques (W. Va. Bar No. 9677)
FARMER, CLINE & CAMPBELL, PLLC
P.O. Box 3842
Charleston, WV 25338
(304) 346-5990

OF COUNSEL:
Matthew A. Taylor (Pa. Bar No. 62098)
James L. Beausoleil, Jr. (Pa. Bar No. 74308)
Dana J. Ash (Pa. Bar No. 80046)
DUANE MORRIS LLP
One Liberty Place, 1650 Market Street
Philadelphia, Pa. 19103
(215) 979-1000

2

IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

SIDNEY V. BARKER,

Plaintiff,

Civil Action No. 05-C-70

vs.

JOHN A. KING, D.O.; DAVID MCNAIR;
TEAYS VALLEY HEALTH SERVICES, INC.,
d/b/a PUTNAM GENERAL HOSPITAL; HCA, INC.;
HEALTHTRUST, INC. – THE HOSPITAL COMPANY;
HOSPITAL CORP., L.L.C.; WRIGHT MEDICAL
TECHNOLOGY, INC.; ROBERT EDWARDS,
a.k.a. BOB EDWARDS; and EBI, L.P.

Defendants.

CERTIFICATE OF SERVICE

I, Stacy A. Jacques, counsel for Wright Medical Technology, Inc., do hereby certify that

a true and exact copy of the following "Answer of Defendant Wright Medical Technology, Inc.,

to the Cross-Claim of Defendant Teays Valley Health Services Center, Inc., d/b/a Putnam

General Hospital" has been served upon counsel of record, by depositing same into the United

States Mail, postage paid, this _4th_ day of August 2005, addressed to the following:

> Arden J. Curry, II, Esquire
> Curry & Tolliver PLLC
> P.O. Box 11866
> Charleston, West Virginia 25338
> *Counsel for Plaintiff*
>
> John A. King, D.O.
> 11210 S. Orange Blossom Trail-Suite 232
> Orlando, Florida 32837-9421
> *Pro se*
>
> D.C. Offut, Jr., Esquire
> Michael M. Fisher, Esquire
> OFFUTT, FISHER & NORD
> P.O. Box 2833
> Charleston, West Virginia 25530

*Counsel for Teays Valley Health Services,*
*Inc.,d/b/a Putnam General Hospital*

Richard D. Jones, Esquire
FLAHERTY, SENSABAUGH & BONASSO PLLC
P.O. Box 3843
Charleston, West Virginia 25338
*Counsel for HCA, Inc., Healthtrust, Inc.—The*
*Hospital Company, and Hospital Corp. L.L.C.*

Thomas C. Hurney, Jr., Esquire
Jackson Kelly PLLC
1600 Laidley Tower
P.O. Box 553
Charleston, West Virginia25322
*Counsel for David McNair*

Neva G. Lusk, Esquire
Spilman Thomas & Battle
P.O. Box 273
Charleston, West Virginia 25321
*Counsel for EBI, L.P.*

Stacy A. Jacques
(W. Va. Bar No. 5986)

PH2\873347.1

31

IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

SIDNEY V. BARKER 2005 AUG 11  AM 10: 41

Plaintiff, GERALD A. WRIGHT, CLERK
PUTNAM CO. CIRCUIT COURT

v.                                                      CIVIL ACTION NO.: 05-C-70

JOHN A. KING, D.O.; DAVID McNAIR;
TEAYS VALLEY HEALTH SERVICES,
INC., d/b/a PUTNAM GENERAL
HOSPITAL; HCA, INC.; HEALTH TRUST,
INC. - THE HOSPITAL COMPANY, a Foreign
Corporation; HOSPITAL CORP, L.L.C.;
WRIGHT MEDICAL TECHNOLOGY, INC.,
a Foreign Corporation; ROBERT EDWARDS,
a/k/a BOB EDWARDS, And EBI, L.P.,

Defendants.

ANSWER OF DEFENDANT, TEAYS VALLEY HEALTH
SERVICES, INC. d/b/a PUTNAM GENERAL HOSPITAL
TO THE CROSS-CLAIM OF EBI, L.P.

COMES NOW defendant, Teays Valley Health Services, Inc. d/b/a Putnam

General Hospital, by counsel, and answers or otherwise responds to the above-

referenced Cross-Claim as follows:

FIRST DEFENSE

The Cross-Claim fails to state a claim upon which relief can be granted

against this defendant. Therefore, the Cross-Claim should be dismissed against

this defendant.

SECOND DEFENSE

1.       Answering Paragraph 1 of the Cross-Claim, this defendant admits that

plaintiffs have asserted various causes of action against the defendants. Insomuch

as these allegations are made or incorporated in the Cross-Claim, this defendant

OFFUTT,
FISHER & NORD
ATTORNEYS & COUNSELLORS

incorporates herein by reference all of its answers and defenses as set forth in its previously filed Answer and Cross-Claim.

2.      Answering Paragraph 2 of the Cross-Claim, this defendant denies the allegations contained therein and demands strict proof thereof.

3.      Answering Paragraph 3 of the Cross-Claim, this defendant denies the allegations contained therein and demands strict proof thereof.

4.      Answering Paragraph 4 of the Cross-Claim, this defendant denies the allegations contained therein and demands strict proof thereof.

5.      This defendant further denies any and all allegations contained in said Cross-Claim which are not specifically admitted herein.

### THIRD DEFENSE

This defendant hereby incorporates by reference all of its answers and defenses as set forth in its previously filed Answer and Cross-Claim in the above-referenced matter as if set forth verbatim herein.

### FOURTH DEFENSE

This defendant reserves the right to plead additional affirmative defenses as discovery in this matter may reveal appropriate.

OFFUTT,
FISHER & NORD
TTORNEYS & COUNSELLORS

2

WHEREFORE, defendant, Teays Valley Health Services, Inc. d/b/a Putnam General Hospital, respectfully prays that the Court dismiss the Cross-Claim filed against it by EBI, L.P.; that it be awarded its costs and attorneys' fees involved in the defense of this action; and that the Court award to it such further relief as it deems just.

### THIS DEFENDANT DEMANDS A TRIAL
### BY JURY ON SAID CROSS-CLAIM

**TEAYS VALLEY HEALTH SERVICES, INC. d/b/a PUTNAM GENERAL HOSPITAL**

**BY COUNSEL**

D.C. Offutt, Jr., Esquire (WV #2773)
Michael M. Fisher, Esquire (WV #4353)
*Offutt, Fisher & Nord*
812 Quarrier Street, Suite 600
Post Office Box 2833
Charleston, West Virginia 25330
Telephone: (304) 343-2869
Facsimile: (304) 343-3053

and

John T. Jessee, Esquire (WV #1885)
*LeClair Ryan, A Professional Corporation*
1800 Wachovia Tower
Drawer 1200
Roanoke, Virginia 24006
Telephone: (540) 510-3018
Facsimile: (540) 510-3050

OFFUTT,
FISHER & NORD
ATTORNEYS & COUNSELLORS

3

## IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

SIDNEY V. BARKER

        Plaintiff,

v.                                  **CIVIL ACTION NO.: 05-C-70**

JOHN A. KING, D.O.; DAVID McNAIR;
TEAYS VALLEY HEALTH SERVICES,
INC., d/b/a PUTNAM GENERAL
HOSPITAL; HCA, INC.; HEALTH TRUST,
INC. - THE HOSPITAL COMPANY, a Foreign
Corporation; HOSPITAL CORP, L.L.C.;
WRIGHT MEDICAL TECHNOLOGY, INC.,
a Foreign Corporation; ROBERT EDWARDS,
a/k/a BOB EDWARDS, And EBI, L.P.,

        Defendants.

### CERTIFICATE OF SERVICE

I, Michael M. Fisher, Esquire, counsel for Defendant, Teays Valley Health Services, Inc., d/b/a Putnam General Hospital, Inc., do hereby certify that a true and exact copy of the foregoing **"Answer of Defendant, Teays Valley Health Services, Inc. d/b/a Putnam General Hospital to the Cross-Claim of EBI, L.P."** has been served upon counsel of record, by depositing same into the United States Mail, First Class, postage pre-paid, this _10th_ day of August, 2005, addressed to the following:

                Arden J. Curry, II Esquire
                ***Curry & Tolliver, PLLC***
                P.O. Box 11866
                Charleston, West Virginia 25338
                *Counsel for Plaintiff*

John A. King, D.O.
11310 S. Orange Blossom Trail, Suite 232
Orlando, Florida 32837-9421
     *Pro Se*

Thomas C. Hurney, Jr., Esquire
**Jackson Kelly PLLC**
1600 Laidley Tower
Post Office Box 553
Charleston, WV 25322
     *Counsel for David McNair*

Richard D. Jones, Esquire
**Flaherty Sensabaugh & Bonasso PLLC**
P.O. Box 3843
Charleston, West Virginia 25338-3843
     *Counsel for HCA, Inc., Healthtrust, Inc.-*
     *The Hospital Company, and Hospital Corp. L.L.C.*

Stephen B. Farmer, Esquire
**Farmer Cline & Campbell**
P.O. Box 3842
Charleston, West Virginia 25338
     *Counsel for Wright Medical and Robert Edwards*
     *aka Bob Edwards*

Matthew A. Taylor, Esquire
Duane Morris
One Liberty Place
Philadelphia, Pennsylvania 19103-7396
     *Counsel for Wright Medical and Robert Edwards*
     *aka Bob Edwards*

Neva G. Lusk, Esquire
**Spilman Thomas & Battle**
Post Office Box 273
Charleston, West Virginia 25321-0273
     *Counsel for EBI, L.P.*

Michael M. Fisher, Esquire (WV #4353)

IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

2005 NOV -3   AM 8: 50

SIDNEY V. BARKER

     Plaintiff,

v.                                 CIVIL ACTION NO.: 05-C-70

JOHN A. KING, D.O.; DAVID McNAIR;
TEAYS VALLEY HEALTH SERVICES,
INC., d/b/a PUTNAM GENERAL
HOSPITAL; HCA, INC.; HEALTH TRUST,
INC. - THE HOSPITAL COMPANY, a Foreign
Corporation; HOSPITAL CORP, L.L.C.;
WRIGHT MEDICAL TECHNOLOGY, INC.,
a Foreign Corporation; ROBERT EDWARDS,
a/k/a BOB EDWARDS, and EBI, L.P.,

     Defendants.

## ORDER

    Upon Motion for *Pro Hac Vice* Admission of John M. Fitzpatrick, for good cause shown, it is hereby ORDERED that the said John M. Fitzpatrick be permitted to enter his appearance *pro hac vice* as counsel for the defendant, Teays Valley Health Services, Inc. d/b/a Putnam General Hospital for purposes of this action.

    ENTERED this 21st day of October, 2005.

N. Edward Eagloski

Honorable N. Edward Eagloski, II

OFFUTT,
FISHER & NORD
TTORNEYS & COUNSELLORS

**ENTERED**
PUTNAM COUNTY CIRCUIT CLERK
DONALD A. WRIGHT

CIVIL ORDER BOOK
NO. 146  PAGE 414-415

Prepared by:


D.C. Offutt, Jr., Esquire (WV #2773)
Michael M. Fisher, Esquire (WV #4353)
*Offutt, Fisher & Nord*
812 Quarrier Street, Suite 600
Post Office Box 2833
Charleston, West Virginia 25330
Telephone: (304) 343-2869
Facsimile: (304) 343-3053

and


John T. Jessee, Esquire (WV #1885)
*LeClair Ryan, A Professional Corporation*
1800 Wachovia Tower
Drawer 1200
Roanoke, Virginia 24006
Telephone:  (540) 510-3018
Facsimile:  (540) 510-3050

## IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

**SIDNEY V. BARKER**

          **Plaintiff,**

**v.**

**JOHN A. KING, D.O.; DAVID McNAIR;
TEAYS VALLEY HEALTH SERVICES, INC.,
d/b/a PUTNAM GENERAL HOSPITAL;
HCA, INC.; HEALTHTRUST, INC. –
THE HOSPITAL COMPANY, a Foreign
Corporation; HOSPITAL CORP., LLC,
WRIGHT MEDICAL TECHNOLOGY, INC.,
ROBERT EDWARDS a/k/a BOB EDWARDS,
and EBI, L.P.**

          **Defendants.**

2005 NOV 28  PH 2: 40

DONALD L. WRIGHT, CLERK
PUTNAM CO. CIRCUIT COURT

**CIVIL ACTION No. 05-C-151**

### ANSWER AND CROSS-CLAIM OF HCA INC., HEALTHTRUST, INC.-THE HOSPITAL COMPANY AND HOSPITAL CORP., LLC

COME NOW Defendants, HCA Inc., Healthtrust, Inc.-The Hospital Company and Hospital Corp., LLC (collectively the "**Upstream Defendants**"), by counsel, and submit the following as their Answer to the Complaint of the plaintiff(s) (the "**Plaintiff**," whether one or more) in this case:

#### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted. Therefore, the claims against the Upstream Defendants should be dismissed.

#### SECOND DEFENSE

1.     Answering Paragraph 1 of the Complaint, based on the Answer filed by Teays Valley Health Services, Inc. ("**Teays Valley**") d/b/a Putnam General Hospital ("**PGH**") in this matter, the Upstream Defendants admit that John A. King, D.O. ("**Dr. King**"), David McNair

("McNair") and certain PGH employees provided medical care to Sidney V. Barker ("**Patient**") as reflected in the PGH medical records.  The Upstream Defendants are without knowledge or information sufficient to admit or deny that Plaintiff was a resident and citizen of the State of West Virginia at all times relevant to the allegations contained in the Complaint.  The Upstream Defendants deny the remaining allegations contained therein and demand strict proof thereof.

2.      Answering Paragraph 2 of the Complaint, based on the Answer filed by Teays Valley in this matter, the Upstream Defendants admit that Dr. King was an osteopathic physician who practiced at PGH from October 30, 2002 until his privileges were suspended on June 5, 2003.  The Upstream Defendants deny the remaining allegations contained therein and demand strict proof thereof.

3.      Answering Paragraph 3 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

4.      Answering Paragraph 4 of the Complaint, the Upstream Defendants admit that at all times relevant to the allegations set forth in the Complaint, Teays Valley owned and operated PGH in Putnam County, West Virginia.   The Upstream Defendants deny the remaining allegations contained therein and demand strict proof thereof.

5.      Answering Paragraph 5 of the Complaint, the Upstream Defendants admit that at all times relevant to the allegations set forth in the Complaint, Teays Valley was an indirect subsidiary of HCA Inc. ("**HCA**").  The Upstream Defendants deny the remaining allegations contained therein and demand strict proof thereof.

6.      Answering Paragraph 6 of the Complaint, the Upstream Defendants admit that Healthtrust, Inc. – The Hospital Company ("**Healthtrust**") is a Delaware corporation.   The Upstream Defendants further admit that HCA owns all of the outstanding common stock of

Healthtrust, which in turn is the sole member of Hospital Corp., LLC ("**Hospital Corp.**"), which in turn owns all of the outstanding common stock of Teays Valley. The Upstream Defendants further admit that Healthtrust does not operate businesses or have employees. The Upstream Defendants deny the remaining allegations contained therein and demand strict proof thereof.

7.      Answering Paragraph 7 of the Complaint, the Upstream Defendants admit that Hospital Corp. is a limited liability company that owns all of the outstanding common stock of Teays Valley; and that Hospital Corp. does not operate businesses or have employees. The Upstream Defendants deny the remaining allegations contained therein and demand strict proof thereof.

8.      Answering Paragraph 8 of the Complaint, based on the Answer filed by Teays Valley in this matter, the Upstream Defendants admit that Dr. King performed the procedures reflected in the Patient's PGH medical records. Upstream Defendants deny the remaining allegations contained therein and demand strict proof thereof.

9.      Answering Paragraph 9 of the Complaint, based on the Answer filed by Teays Valley in this matter, the Upstream Defendants admit that Teays Valley employed McNair as a surgical technologist from November 13, 2002 until he resigned on July 24, 2003. The remaining allegations contained in Paragraph 9 of the Complaint contain legal conclusions to which no response is required. To the extent that a response is required, the Upstream Defendants deny the remaining allegations and demand strict proof thereof.

10.     Answering Paragraph 10 of the Complaint, based on the Answer filed by Teays Valley in this matter, the Upstream Defendants admit that McNair and other health care providers assisted Dr. King while Dr. King performed the operative procedures set forth in Paragraph 8 of the Complaint; and that the operative report dictated by Dr. King lists McNair as

a physician assistant or orthopedic physician assistant although he was not employed in that capacity by PGH. The Upstream Defendants deny the remaining allegations contained therein and demand strict proof thereof.

11.     Answering Paragraph 11 of the Complaint, based on the Answer filed by Teays Valley in this matter, the Upstream Defendants admit that Wright Medical Technology, Inc. ("**Wright Medical**") sold or supplied medical products, equipment, and devices, including MIG and Allomatrix to PGH. The Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein concerning Wright Medical as a foreign corporation and, therefore, deny the same and demand strict proof thereof. The Upstream Defendants deny the remaining allegations contained therein and demand strict proof thereof.

12.     Answering Paragraph 12 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

13.     Answering Paragraph 13 of the Complaint, based on the Answer filed by Teays Valley in this matter, the Upstream Defendants admit that EBI, L.P. sold or supplied medical products, equipment, and devices, including bone stimulators and the EBI ionic spacer, to PGH. The Upstream Defendants lack sufficient information or knowledge to admit or deny that EBI, L.P. was a foreign corporation and, therefore, deny the same and demand strict proof thereof. The Upstream Defendants deny the remaining allegations contained therein and demand strict proof thereof.

14.     Answering Paragraph 14 of the Complaint, the Upstream Defendants re-assert their answers and defenses to Paragraphs 1 through 13 of the Complaint as if set forth fully herein.

15.     Answering Paragraph 15 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

16.     Answering Paragraph 16 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

17.     Answering Paragraph 17 (a-f) of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

18.     Answering Paragraph 18 of the Complaint, the Upstream Defendants can neither admit nor deny the allegations contained therein as the allegations simply refer to the Notice of Claim and Screening Certificates of Merit.   To the extent the allegations incorporate the allegations contained within such documents, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

19.     Answering Paragraph 19 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

20.     Answering Paragraph 20 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

21.     Answering Paragraph 21 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

22.     Answering Paragraph 22 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

23. Answering Paragraph 23 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

24. Answering Paragraph 24 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

25. Answering Paragraph 25 of the Complaint, the Upstream Defendants re-assert their answers and defenses to Paragraphs 1 through 24 of the Complaint as if set forth fully herein.

26. Answering Paragraph 26 of the Complaint, based on the Answer filed by Teays Valley in this matter, the Upstream Defendants admit the allegations contained therein.

27. Answering Paragraph 27 of the Complaint, based on the Answer filed by Teays Valley in this matter, the Upstream Defendants admit the allegations contained therein.

28. Answering Paragraph 28 (a-p) of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

29. Answering Paragraph 29 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

30. Answering Paragraph 30 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

31. Answering Paragraph 31 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

32. Answering Paragraph 32 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

33.    Answering Paragraph 33 of the Complaint, the Upstream Defendants re-assert their answers and defenses to Paragraphs 1 through 32 of the Complaint as if set forth fully herein.

34.    Answering Paragraph 34 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

35.    Answering Paragraph 35 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

36.    Answering Paragraph 36 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

37.    Answering Paragraph 37 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

38.    Answering Paragraph 38 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

39.    Answering Paragraph 39 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

40.     Answering Paragraph 40 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

41.     Answering Paragraph 41 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

42.     Answering Paragraph 42 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

43.     Answering Paragraph 43 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

44.     Answering Paragraph 44 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

45.     Answering Paragraph 45 (a-b) of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

46.     Answering Paragraph 46 of the Complaint, the Upstream Defendants deny that McNair performed a surgical procedure on the Patient. As the remainder of the allegations contained in Paragraph 46 do not pertain to the Upstream Defendants, no response is required. To the extent a response is required, Upstream Defendants deny the same and demand strict proof thereof.

47.     Answering Paragraph 47 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

48.     Answering Paragraph 48 of the Complaint, the Upstream Defendants re-assert their answers and defenses to Paragraphs 1 through 47 of the Complaint as if set forth fully herein.

49.     Answering Paragraph 49 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

50.     Answering Paragraph 50 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

51.     Answering Paragraph 51 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

52.     Answering Paragraph 52 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

53.     Answering Paragraph 53 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

54.     Answering Paragraph 54 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

55.     Answering Paragraph 55 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

56.     Answering Paragraph 56 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

57.     Answering Paragraph 57 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

58.     Answering Paragraph 58 of the Complaint, the Upstream Defendants deny that McNair performed a surgical procedure on the Patient.   As the remainder of the allegations contained in Paragraph 58 of the Complaint do not pertain to the Upstream Defendants, no response is required.   To the extent a response is required, the Upstream Defendants deny the same and demand strict proof thereof.

59.     Answering Paragraph 59 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

60.     Answering Paragraph 60 of the Complaint, the Upstream Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, deny the same and demand strict proof thereof.

61.     Answering Paragraph 61 of the Complaint, the Upstream Defendants re-assert their answers and defenses to Paragraphs 1 through 60 of the Complaint as if set forth fully herein.

62.     Answering Paragraph 62 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

63.     Answering Paragraph 63 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

64.     Answering Paragraph 64 of the Complaint, the Upstream Defendants re-assert their answers and defenses to Paragraphs 1 through 63 of the Complaint as if set forth fully herein.

65.     Answering Paragraph 65 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

66.     Answering Paragraph 66 of the Complaint, the Upstream Defendants re-assert their answers and defenses to Paragraphs 1 through 65 of the Complaint as if set forth fully herein.

67.     Answering Paragraph 67 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

68.     Answering Paragraph 68 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

69.     Answering Paragraph 69 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

70.     Answering Paragraph 70 of the Complaint, the Upstream Defendants re-assert their answers and defenses to Paragraphs 1 through 69 of the Complaint as if set forth fully herein.

71.     Answering Paragraph 71 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

72.     Answering Paragraph 72 of the Complaint, the Upstream Defendants re-assert their answers and defenses to Paragraphs 1 through 71 of the Complaint as if set forth fully herein.

73.     Answering Paragraph 73 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

74.     Answering Paragraph 74 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

75.     Answering Paragraph 75 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

76.     Answering Paragraph 76 of the Complaint, the Upstream Defendants deny that any entity or individual sold or supplied products and medical devices to McNair. The Upstream Defendants also deny that McNair performed a surgical procedure on the Patient. As the remaining allegations contained in Paragraph 76 of the Complaint do not pertain to the Upstream Defendants, no response is required.   To the extent a response is required, the Upstream Defendants deny the remaining allegations contained therein and demand strict proof thereof.

77.     Answering Paragraph 77 of the Complaint, the Upstream Defendants re-assert their answers and defenses to Paragraphs 1 through 76 of the Complaint as if set forth fully herein.

78.    Answering Paragraph 78 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

79.    Answering Paragraph 79 of the Complaint, the Upstream Defendants re-assert their answers and defenses to Paragraphs 1 through 78 of the Complaint as if set forth fully herein.

80.    Answering Paragraph 80 of the Complaint, the Upstream Defendants admit that Teays Valley is an indirect, wholly owned subsidiary of HCA, and that its original Articles of Incorporation (which were filed prior to Teays Valley becoming an indirect, wholly owned subsidiary of HCA) indicated that its principal place of business was One Park Plaza, Nashville, Tennessee 37203; and further that this is currently the location of the corporate headquarters of HCA.  The Upstream Defendants further admit that the Bylaws of the Board of Trustees of the Hospital in effect in 2003 used the words "local advisory board" in one portion of the Bylaws to describe the Board of Trustees of the Hospital.  The Upstream Defendants deny the remaining allegations contained therein and demand strict proof thereof.

81.    Answering Paragraph 81 of the Complaint, the Upstream Defendants admit that HCA owns all of the outstanding common stock of Healthtrust, which in turn is the sole member of Hospital Corp., which in turn owns all of the outstanding common stock of Teays Valley.  The Upstream Defendants further admit that Healthtrust, Hospital Corp. and HCA do not operate businesses or have employees.  The Upstream Defendants further admit that Teays Valley has employees.  The Upstream Defendants deny the remaining allegations contained therein and demand strict proof thereof.

82.    Answering Paragraph 82 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

83.     Answering Paragraph 83 of the Complaint, the Upstream Defendants admit that an unaudited financial statement for Teays Valley reflecting a net worth of $16,186,146 as of September 30, 2004, and a pretax loss of $769,228 for the nine (9) months ending September 30, 2004, was attached to an affidavit submitted in support of a motion to dismiss and supporting memorandum filed by HCA, Healthtrust and Hospital Corp. in litigation styled Civil Action No. 04-C-649; *B.R. v. Teays Valley Health Services, Inc. d/b/a Putnam General Hospital and Hospital Corporation of America*, in the Circuit Court of Kanawha County, West Virginia. The Upstream Defendants deny the remaining allegations contained therein and demand strict proof thereof.

84.     Answering Paragraph 84 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

85.     Answering Paragraph 85 of the Complaint, the Upstream Defendants re-assert their answers and defenses to Paragraphs 1 through 84 of the Complaint as if set forth fully herein.

86.     Answering Paragraph 86 (a-f) of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

87.     Answering Paragraph 87 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

88.     Answering Paragraph 88 of the Complaint, the Upstream Defendants admit that one of their affiliates, Healthcare Indemnity, Inc., provides insurance to the operating subsidiaries of HCA Inc. The Upstream Defendants deny the remaining allegations contained therein and demand strict proof thereof.

89.     Answering Paragraph 89 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

90.     Answering Paragraph 90 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

91.     Answering Paragraph 91 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

92.     Answering Paragraph 92 of the Complaint, the Upstream Defendants deny the allegations contained therein and demand strict proof thereof.

93.     To the extent that any allegation in the Complaint is not specifically admitted herein, it is denied.

### THIRD DEFENSE

Should the evidence so indicate, the Upstream Defendants will assert that the injuries complained of by Plaintiff were the result of an underlying medical condition, medical process, or an act of God and were not the result of any negligent act or omission by the Upstream Defendants; therefore, the Complaint should be dismissed against them.

### FOURTH DEFENSE

The Upstream Defendants assert all the protections, limitations, and defenses contained in the Medical Professional Liability Act, contained in West Virginia Code § 55-7(b)-1 *et seq.*

### FIFTH DEFENSE

Should the evidence so indicate, the Upstream Defendants will assert that the negligence of the Patient and/or Plaintiff equaled or exceeded the negligence, if any, of the Upstream Defendants.  Therefore, the Complaint is barred by the doctrine of comparative negligence.  In

the alternative, any judgment thereon should be reduced by the percentage of contributory negligence of the Patient and/or Plaintiff.

### SIXTH DEFENSE

Should the evidence so indicate, the Upstream Defendants will assert that the Patient and/or Plaintiff assumed the risk of the claimed injuries. Therefore, Patient or Plaintiff's claims are barred by the doctrine of assumption of risk or, alternatively, any award should be reduced by the comparative assumption of risk.

### SEVENTH DEFENSE

Should the evidence so indicate, the Upstream Defendants will assert that Plaintiff's claims are barred by the applicable statute of limitations and/or the equitable doctrine of laches.

### EIGHTH DEFENSE

Should the evidence so indicate, the Upstream Defendants will assert that injuries of the Patient and/or Plaintiff were proximately caused by the acts or omissions of others, negligent or otherwise, over whom the Upstream Defendants exercise no control and for whose acts or omissions they are not responsible.

### NINTH DEFENSE

The Upstream Defendants specifically deny the agency relations alleged in the Complaint and demand strict proof thereof.

### TENTH DEFENSE

Should the evidence so indicate, the Upstream Defendants will assert that the Patient and/or Plaintiff failed to mitigate damages.

### ELEVENTH DEFENSE

Plaintiff cannot establish a claim for punitive damages against the Upstream Defendants. As such, Plaintiff's claim for punitive damages should be dismissed against the Upstream Defendants.

## TWELFTH DEFENSE

The claim for punitive damages violates the Due Process Clauses of the United States Constitution and the West Virginia Constitution and, therefore, should be dismissed.

## THIRTEENTH DEFENSE

The Upstream Defendants neither caused nor contributed to the Patient or Plaintiff's alleged injuries and damages of the Patient and/or Plaintiff.

## FOURTEENTH DEFENSE

The Upstream Defendants had no duty to the Patient or Plaintiff, nor did they breach any such alleged duties.

## FIFTEENTH DEFENSE

With the exception of the Negligent Credentialing, Privileging, Recruitment, Hiring, Supervision and Retention claim ("**Negligent Credentialing Claims**"), Plaintiff failed to comply with the pre-filing requirements of West Virginia Code § 55-7B-6, and therefore, all other claims should be dismissed.

## SIXTEENTH DEFENSE

The Negligent Credentialing Claims are barred by the Health Care Quality Improvement Act.

## SEVENTEENTH DEFENSE

Teays Valley was not organized and operated as a mere tool or business conduit of the Upstream Defendants, and therefore the Upstream Defendants are not responsible for the conduct of Teays Valley pertinent to this case on an alter ego or other veil piercing or similar theory.

## EIGHTEENTH DEFENSE

There is not such unity between Teays Valley and the Upstream Defendants that the separateness of Teays Valley has ceased, and therefore the Upstream Defendants are not

responsible for the conduct of Teays Valley pertinent to this case on alter ego or other veil piercing or similar theories.

### NINETEENTH DEFENSE

The Plaintiff will not suffer fraud or injustice if Teays Valley is solely responsible for its own conduct pertinent to this case, and therefore, the Upstream Defendants are not responsible for the conduct of Teays Valley on alter ego or other veil piercing or similar theories.

### TWENTIETH DEFENSE

The Upstream Defendants reserve unto themselves the right to assert such claims, counter claims, cross-claims, third party claims or other claims as investigation and discovery may prove applicable and hereby reserve unto themselves all of their rights associated with any such claim or potential claim.

### TWENTY FIRST DEFENSE

Without being fully advised or knowing all the facts relevant to this civil action, the Upstream Defendants hereby invoke any and all affirmative defenses applicable in the defense of the claims asserted herein and against them by Plaintiff as may be relevant or pertinent and justified and established by the facts and circumstances through discovery or otherwise.  Such affirmative defenses include those contemplated and/or set forth in Rule 8 and/or Rule 12 of the West Virginia Rules of Civil Procedure, and any and all matters constituting an avoidance or affirmative defense contemplated by Rule 8 and/or Rule 12 of the West Virginia Rules of Civil Procedures.  Such affirmative defenses include, without limitation: accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, informed

consent, failure to mitigate damages, lack of jurisdiction over the subject matter, lack of jurisdiction over the person, improper venue, insufficiency of process or insufficiency of service of process, and failure to join a party under Rule 19 of the West Virginia Rules of Civil Procedure.

### TWENTY SECOND DEFENSE

The Upstream Defendants hereby adopt and incorporate all defenses asserted by other defendants to this action.

### TWENTY THIRD DEFENSE

The Upstream Defendants reserve the right to amend, expand, alter, or enlarge their answer to the Complaint at anytime that it is proper to do so to rely upon defenses disclosed or determined prior or incident to trial.

## CROSS-CLAIM AGAINST CO-DEFENDANT

COME NOW Defendants/Cross-Claim Plaintiffs, the Upstream Defendants, by counsel, pursuant to Rule 13(g) of the West Virginia Rules of Civil Procedure, and without waiving the defenses asserted in their Answer above, but in the alternative, state as follows for their Cross-Claim against co-defendant(s) Dr. King, Wright Medical, Robert Edwards a/k/a Bob Edwards, and EBI, L.P. (collectively the **"Co-Defendant"** whether one or more):

1.     In this litigation, Plaintiff seeks to recover damages against Teays Valley under various theories, including, but not limited to, medical malpractice, civil conspiracy, intentional and negligent infliction of emotional distress, tort of outrage, fraud and deceit, and joint venture/joint enterprise.

2.     Plaintiff additionally seeks to impose liability on the Upstream Defendants on the basis of alter ego and similar veil piercing theories.

3.     Co-Defendant individually (and if there be more than one of them, collectively) committed wrongful acts, negligent or otherwise, against the Patient and/or Plaintiff that caused or contributed to any injuries and damages sustained by the Patient or Plaintiff.

4.     As noted in its Cross-Claim against the Co-Defendant, Teays Valley committed no wrongful acts, negligent or otherwise, against the Patient or Plaintiff.

5.     If it is determined in this litigation that the Upstream Defendants are liable for damages to Plaintiff because of a veil piercing or any other theory (which liability is expressly denied), then the Upstream Defendants are entitled to be indemnified by the Co-Defendant (and each of them, if there be more than one) for any such liability or, in the alternative, to recover a pro rata share of the amount of said judgment from the Co-Defendant (or each of them, if there be more than one) by way of contribution.

**WHEREFORE,** the Upstream Defendants demand that the Complaint filed herein against them be dismissed, with prejudice, and that they be awarded their costs incurred in the defense of this claim, including reasonable attorneys' fees.

Further, Defendants/Cross-Claim Plaintiffs, the Upstream Defendants, move the Court for a judgment against the Co-Defendant (and jointly and severally against each of them, if there be more than one), in the amount of any judgment rendered for Plaintiff against the Upstream Defendants in this action for such costs and expenses incurred in the defense thereof, including reasonable attorneys' fees.

**UPSTREAM DEFENDANTS DEMAND A TRIAL BY JURY**

> **HCA INC., HEALTHTRUST, INC.-THE HOSPITAL COMPANY, and HOSPITAL CORP., LLC**
>
> By counsel:
>
> Richard D. Jones (WV Bar #1927)
> Tricia Herzfeld (WV Bar #9825)
> FLAHERTY, SENSABAUGH & BONASSO, PLLC
> P. O. Box 3843
> Charleston WV 25338-3843
> (800) 416-3225
> (304) 345-0260 (fax)

## CERTIFICATE OF SERVICE

I, Richard D. Jones, counsel for Defendants, HCA Inc., Healthtrust, Inc. – The Hospital Company, and Hospital Corp., LLC, does hereby certify that a true and exact copy of the foregoing has been served upon counsel of record, by depositing same into the United States Mail, First Class, postage pre-paid, this 2⁴ day of November, 2005, addressed to the following:

William S. Druckman
THE LAW OFFICES OF WILLIAM S. DRUCKMAN
606 Virginia Street East, Suite 100
Charleston, West Virginia 25301
*Attorneys for one or more Plaintiffs*

Richard D. Lindsay, M.D., J.D.
TABOR LINDSEY & ASSOCIATES
1223 Virginia Street
Post Office Box 1269
Charleston, West Virginia 25325
*Attorneys for one or more Plaintiffs*

Arden J. Curry, II
PAULEY CURRY STURGEON & VANDERFORD, PLLC
100 Kanawha Boulevard, West
Post Office Box 2786
Charleston, West Virginia 25330
*Attorneys for one or more Plaintiffs*

Robert P. Welsh
THE MASTERS LAW FIRM, LLC
181 Summers Street
Charleston, West Virginia 25301-2177
*Attorneys for one or more Plaintiffs*

Frank M. Armada
ARMADA ROGERS & THOMPSON
3972 Teays Valley Road
Hurricane, West Virginia 25526
*Attorneys for one or more Plaintiffs*

Paul M. Stroebel

STROEBEL & JOHNSON, PLLC
Post Office Box 2582
Charleston, West Virginia 25329
*Attorney for one or more Plaintiffs*

L. Dante di Trapano
DI TRAPANO BARRETT AND DIPIERO, PLLC
604 Virginia Street East
Charleston, West Virginia 25301
*Attorneys for one or more Plaintiffs*

Cale Conley
CONLEY GRIGGS, LLP
4400 Peachtree Road, N.E.
Atlanta, GA 30319
*Attorneys for one or more Plaintiffs*

John A. King, D.O.
11310 S. Orange Blossom Trail, Suite 232
Orlando, Florida 32837-9421
*Pro Se*

P. Gregory Haddad
MACCORKLE LAVENDER CASEY & SWEENEY, PLLC
6000 Hampton Center, Suite B
Morgantown, West Virginia 26505
*Attorneys for John A. King, D.O.*

D.C. Offutt, Jr.
Michael M. Fisher
OFFUTT FISHER & NORD
Post Office Box 2833
Charleston, West Virginia 25530
*Attorneys for Teays Valley Health Services, Inc.*
*d/b/a Putnam General Hospital*

John Fitzpatrick
LECLAIR RYAN
707 East Main Street
Eleventh Floor
Richmond, Virginia 23219
*Attorneys for Teays Valley Health Services, Inc.*
*d/b/a Putnam General Hospital*

John Jessee

LeClair Ryan
1800 Wachovia, Drawer 1200
Roanoke, Virginia 24006
*Attorneys for Teays Valley Health Services, Inc.*
*d/b/a Putnam General Hospital*

Kelvin L. Newsome
LeClair Ryan
225 Reinekers Lane, Suite 700
Alexandria, Virginia 22314
*Attorneys for Teays Valley Health Services, Inc.*
*d/b/a Putnam General Hospital*

George A. Shannon, Jr.
Shannon, Martin, Finkelstein & Alvarado, P.C.
2400 Two Houston Center, 909 Fannin Street
Houston, TX 77010
*Attorneys for HCA Inc., Healthtrust Inc.-The Hospital Company*
*and Hospital Corp, LLC*

Thomas C. Hurney, Jr.
Jackson Kelly, PLLC
1600 Laidley Tower
Post Office Box 553
Charleston, West Virginia 25322
*Attorneys for David McNair*

Neva G. Lusk
Spilman Thomas & Battle, PLLC
The Spilman Center
300 Kanawha Boulevard, East
Post Office Box 273
Charleston, West Virginia 25321-0273
*Attorneys for EBI, L.P.*

Stephen B. Farmer
Farmer Cline & Arnold, PLLC
Post Office Box 3842
Charleston, West Virginia 25338
*Attorneys for Wright Medical Technology, Inc.*
*and Robert Edwards a/k/a Bob Edwards*

Matthew A. Taylor
DUANE MORRIS
One Liberty Place
Philadelphia, Pennsylvania 19103-7396
*Attorneys for Wright Medical Technology, Inc.*
*and Robert Edwards a/k/a Bob Edwards*

Richard D. Jones (WV #1927)

51
52
05-C-70

# IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

**SIDNEY BARKER,**

        **Plaintiff,**

v.                                      **Civil Action No. 05-C-151**

**JOHN A. KING, D.O.; DAVID MCNAIR;**
**TEAYS VALLEY HEALTH SERVICES, INC.,**
**d/b/a PUTNAM GENERAL HOSPITAL; HCA, INC.;**
**HEALTHTRUST, INC. – THE HOSPITAL COMPANY;**
**HOSPITAL CORP., L.L.C.; WRIGHT MEDICAL**
**TECHNOLOGY, INC.; ROBERT EDWARDS,**
**a.k.a. BOB EDWARDS; and EBI L.P.,**

        **Defendants.**

```
┌─────────────────────────┐
│         FILED           │
│                         │
│      DEC 1 4 2005       │
│                         │
│     PUTNAM COUNTY       │
│     CIRCUIT COURT       │
└─────────────────────────┘
```

## ANSWER OF DEFENDANT WRIGHT MEDICAL TECHNOLOGY, INC., TO THE CROSS-CLAIM OF DEFENDANTS HCA INC., HEALTHTRUST, INC. – THE HOSPITAL COMPANY, AND HOSPITAL CORP., LLC

COMES NOW Defendant Wright Medical Technology, Inc. ("Wright Medical"), by its attorneys, and hereby submits its Answer to the Cross-Claim of Defendants HCA Inc., Healthtrust, Inc. – The Hospital Company, and Hospital Corp., LLC (collectively the "Upstream Defendants"), as follows:

    1.     It is admitted that the Plaintiff has purported to allege certain causes of action set forth in the Complaint against the Defendant Teays Valley Health Services, Inc. ("Teays Valley"). The remaining allegations contained in Paragraph 1 constitute conclusions of law to which no response is required.

    2.     It is admitted that the Plaintiff has also purported to allege certain causes of action set forth in the Complaint against the Upstream Defendants. The remaining allegations contained in Paragraph 2 constitute conclusions of law to which no response is required.

3.      Denied. It is specifically denied that Wright Medical committed any wrongful acts, negligent or otherwise, and it is specifically denied that Wright Medical caused or contributed to any injuries or damages allegedly sustained by the Plaintiff.

4.      Denied. Wright Medical is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph, and they are therefore denied.

5.      Denied. It is denied that Wright Medical would be liable for contribution and/or indemnity in the event that it is determined in this litigation that the Upstream Defendants are liable for damages to Plaintiff.

WHEREFORE, Defendant Wright Medical Technology, Inc., denies any and all liability to any other party for any amount and denies that the Upstream Defendants are entitled to any relief whatsoever. Wright Medical respectfully requests that this Court dismiss with prejudice the Cross-Claims of the Upstream Defendants and award Wright Medical such further relief to which it may be entitled and as the Court may deem proper.

**WRIGHT MEDICAL TECHNOLOGY, INC.,**

Defendant,

By Counsel:


STEPHEN B. FARMER (W.Va. Bar No. 1165)
G. KENNETH ROBERTSON (W.Va. Bar No. 5986)
MARK A. GLOVER (W.Va. Bar No. 8038)
FARMER, CLINE & CAMPBELL, PLLC
746 Myrtle Road (25314)
Post Office Box 3842
Charleston, West Virginia  25338
(304) 346-5990